OPINION OF THE COURT
Leon Deutsch, J.
The instant proceeding is a petition by an unmarried 22-year-old male that he be allowed to adopt an unmarried 26-year-old male with whom he shares a home. The Probation Department’s written report of its routine adoption investigation disclosed that the parties have a homosexual relationship. The parties admitted to this at a hearing.
The issue presented appears to be a matter of first impression in this jurisdiction. May the court properly refuse to grant an adoption between two consenting adults who have a homosexual relationship? Is this such a use or misuse of the adult adoption statute as to warrant a denial of the application?
The admitted homosexual relationship gave the court reason to pause. The court does not wish to allow the adoption statute to be used as a shield for the protection of homo *793 sexuality, or even to give the appearance of approving or encouraging such practice, much less express approval.
At the hearing, the court cautioned the parties as to the permanence of adoption and questioned them as to their reasons for wishing to enter into an adopter-adoptee status. The parties testified that they wish to establish a legally cognizable relationship in order to facilitate inheritance, the handling of their insurance policies and pension plans, and the acquisition of suitable housing. The adopter further stated that the parties wish to establish a “father-son” relationship in terms of the legal and economic responsibility each would have toward the other. The adoptee concurred in this notion and added that even if there were a “failing in intimacy”, there would still be “a bond, a responsibility”.
Both parties insisted that they were not attempting to use the adult adoption statute to create, in effect, a pseudo-marriage. The parties also conceded their awareness that there .were other ways in which they could effectuate a legal relationship, such as reciprocal wills, naming each other as beneficiary of insurance policies, and executing powers of attorney. Despite these options, the parties contended that they, nevertheless, wished to establish a more permanent legal bond. Furthermore, the adoptee testified that his family did not approve of the relationship, and he apparently feared that attempts might be made to set aside property arrangements between the parties if they were not legally adoptive father and adopted son.
Finally, the adopter testified that the reason he is the adopter although he is younger than the adoptee, is that his mother had died intestate, her estate was not yet settled, and he wished to avoid the potential of cutting himself off from an inheritance through his mother by virtue of being an adoptee.
Article 7 of the Domestic Relations Law provides the statutory mandate for all adoptions, including those between two adults. Subdivision 1 of section 109 of the Domestic Relations Law reads as follows: “ ‘ [a] doptive parent’ or ‘adopter’ shall mean a person adopting and ‘adoptive child’ or ‘adoptee’ shall mean a person adopted.” (Emphasis supplied.) The relevant portion of section 110 of the Domestic *794 Relations Law provides “An adult unmarried person * * * may adopt another person .” (Emphasis supplied.)
Adult adoptions were first allowed in New York State as long ago as 1915 when section 110 of the Domestic Relations Law was then amended to permit the adoption, not only of a minor as the statute prior thereto permitted, but also of a “person of the age of twenty-one years and upwards” (see Matter of Kingsbury, 192 App Div 206, 210, affd 230 NY 580). In 1938, section 110 of the Domestic Relations Law was further modified and the above phrase was removed, substituting the word “person” to characterize one who may be adopted, whether adult or minor, in the language of the current statute. (See Matter of Anonymous, 177 Misc 683.)
Subdivision 4 of section 111 of the Domestic Relations Law, referring to section 111 (subd 1, par [b]) of the Domestic Relations Law, dispenses with the requirement of consent of the parents or surviving parent of an adoptive child over the age of 18 who is born in wedlock, as is the case of the adoptee herein. (Other portions of the statute are not applicable, except that it is explicit, whether born in or out of wedlock, where the adoptive child is over 18 and in no one’s lawful custody, no parental or third-party consent is required.)
The adoption statute (Domestic Relations Law, art 7) deals with two types of adoptions: adoption from an authorized agency (title 2) and private-placement adoption (title 3). Subdivision 5 of section 109 of the Domestic Relations Law defines private-placement adoption as “any adoption other than that of a minor who has been placed for adoption by an authorized agency.” (Emphasis supplied.) Subdivision 4 of section 116 of the Domestic Relations Law, referring to private-placement adoption, sets the standard of “best interests of the child” as applicable to the granting of an order of adoption. As above noted, an “adoptive child” is “a person adopted” (Domestic Relations Law, § 109, subd 1). It appears, therefore, that the “best interests” standard is applicable to any adoption.
The court, however, must inevitably ask: What possible meaning can a “best interests” standard have when applied *795 to a competent adult person over the age of 21, in no one’s custody, whose surviving parent’s consent under the statute is not required, and who wishes to enter into a consensual adoption for credible and uncontroverted legal and economic reasons valid on their face? Logically, we are compelled to say that it has no meaning whatever, or that the Legislature must have intended a different meaning from the standard as applied to minors.
The only reported New York case on the issue is Stevens v Halstead (181 App Div 198, 202). There, the court reasoned that it must determine whether the “moral and temporal” interests of the adult adoptee would be promoted by the adoption. However, the Stevens court appears to be more concerned with condemning the particular adoption there in question on public policy grounds rather thán on the theory that the adoption was not in the best interests of the adoptee. Stevens was a suit in equity by the only next of kin of the decedent to annul his ancestor’s adoption of a 47-year-old married woman with whom the adoptor-decedent was living in an adulterous relationship. The heir claimed that the woman had used undue influence on the elderly decedent to induce him to adopt her so that she could inherit the estate. The court stated (supra, p 201): “Surely it is against public policy to admit a couple living in adultery to the relation of parent and child. This meretricous relationship, and the undue influence which imposed the will of the defendant on decedent, condemn the adoption. It is not only against public policy, but it is a fraud on the surrogate to induce him to approve the relation of parent and child between an adultress and her aged and infirm paramour.” Thus, the Stevens court held that the complaint stated a cause of action, and that a suit in equity to set aside the adoption would lie.
It is noteworthy that since Stevens there have been no reported decisions in this State following that line of reasoning. We will, below, address ourselves to the public policy issue raised by Stevens.
It is significant that in New York State there are almost no statutory procedural restrictions on adult adoptions, and equally significant that the only consents required are those of the parties themselves, especially so, as a few States do *796 place important statutory restrictions on such adoptions. For example, in Florida, the natural parents of the adoptee must consent or the adoptor must file proof of service upon the natural parent or parents who have not consented. (Fla Stat Ann, § 63.062, subd [4], par [b].) Other restrictions which are imposed by statute on adult adoptions in other States include: proscriptions relating to age requirements between the adoptor and adoptee (Idaho Code, § 16-1502); requirements that the adoptor be the adoptee’s stepparent, uncle or aunt (Va Code, § 63.1-222); requirements that the adoptee live with the adoptor for a specified period of time before the attainment of majority (Va Code, § 63.1-222); and requirements that the adoptor has sustained the relation of parent to the adoptee for a continuing stated period of time (Va Code, § 63.1-222; Idaho Code, § 16-1501).
Nevertheless, the trend, in most jurisdictions in recent years has been to loosen restrictions and to de-emphasize the benefits to the parties and the motive for adoption when the adoptee is an adult. (See Adoption of Adults: A Family Law Anomaly, 54 Cornell L Rev 566.) The reasons for this increasingly nonrestrictive approach is legislative recognition of the distinctions noted by Professor Walter Wadlington (54 Cornell L Rev 566, 573-574) : “there are two generalized distinctions between the statutory treatments of adoption of adults and of minors in this country today. First, adoption of a minor usually is more elaborately supervised and its purpose is more carefully examined from a standpoint of social interests, fewer purposes being considered acceptable. A second distinction is that adoption of a minor is based almost universally on the consent of the natural parent or of the state or of some other agent acting in the parent’s stead, while adoption of qá adult typically requires the consent of only the adoptor and the adoptee (and perhaps the spouse of a married adoptor).” This distinction was aptly expressed by the court in Matter of Griswold (140 NJ Super 35, 51-52): “The adoption of children and the adoption of adults involve quite different considerations and different factors of policy and require and receive different treatment. The basic purpose of child adoption is to provide and protect the welfare of children, *797 to provide homes and families and security for homeless children, and to provide children for couples who desire to have children to love and raise and maintain. A substantial factor here is the duty and obligation of support and maintenance.
“In an adult adoption the relation between the parties is different, the motivation can be quite varied, and such adoptions are treated differently in the statutes. Adoption of adults is ordinarily quite simple and almost in the nature of a civil contract.”
New York is very much in the mainstream of jurisdictions in its simplified approach to adult adoptions, and in having almost no statutory procedural restrictions for such adoptions. Indeed, the New York statute, section 110 of the Domestic Relations Law, itself appears to point to the Legislature’s recognition of the inherent difference between adult and minor adoptions, in its definition of an adoption proceeding. Such a proceeding is defined as a “legal proceeding whereby a person takes another person into the relation of child and thereby acquires the rights and incurs the responsibilities of parent in respect of such other person”. This definition is broad enough to encompass and justify the legal and economic relationship the parties here seek to create and which the Legislature has seen fit to allow.
Inasmuch as the Legislature has taken statutory notice of the significant difference between adult and minor adoptions by virtue of not requiring parental consent in adult adoptions, and as the Legislature by its deliberately broad definition of an adoption proceeding, has taken notice of the many legal and economic purposes which may motivate an adult adoption, the “best interests” standard was clearly foreseen by the Legislature as a standard to be considered only within those legal and economic purposes sought to be achieved by the parties. Certainly, it is unthinkable that the Legislature expected that a Judge could or would intervene in the personal life of a competent 26-year-old adult person (harming no one and violating no law, as we shall discuss below) and determine for him what his “best interests” are, in the same sense that a court would apply that standard to a young child. Neither the Legislature nor *798 the judiciary has such arrogance, much less the ability.
The only other basis for tbe disallowal of this adult adoption would be if we were to determine that the sexual preferences of the parties justified or required such disapproval on public policy considerations. As previously noted, Stevens (181 App Div 198, 201, supra), held that it is “against public policy to admit a couple living in adultery to the relation of parent and child”. (See, also, Schaefer v Merchants Nat. Bank of Cedar Rapids, 160 NW2d 318 [Iowa].)
We observe, at once, that while few, if any, can recall when adultery was prosecuted in the criminal courts of this State, it nevertheless does remain a crime in New York State (Penal Law, § 255.17). The statute defines adultery as “engaging in sexual intercourse with another person at a time when one has a living spouse, or the other person has a living spouse.” Obviously, this is inapplicable to the parties herein. We may note, too, that the instant adoption would not be violative of the public policy of New York by virtue of the crime of incest despite the “parent-child” relationship. Section 255.25 of the Penal Law defines incest as “engaging] in sexual intercourse with a person * * * related to him * * * as an ancestor, descendant, brother or sister of either the whole or the half blood, uncle, aunt, nephew or niece.” Thus, the incest statute is not applicable to the parties as they have no blood ties at all.
However, a consensual homosexual relationship between adults is no longer a crime in New York State. The New York Court of Appeals has just recently held unconstitutional section 130.38 of the Penal Law which prohibits sodomy between consenting adults. (People v Onofre, 51 NY2d 476.) The Court of Appeals in this significant decision has not merely eliminated consensual homosexuality as a crime in this State, thereby removing the Penal Law ais a public policy consideration in the matter of an adoption between two consenting adult homosexuals, but its eloquent pronouncements have considerable import for the wider public policy consideration of public morality. As the court stated (pp 489-490): “There is a distinction between public and private morality and the private morality of an *799 individual is not synonymous with nor necessarily will have effect on what is known as public morality (see State v Saunders, 75 NJ 200, 218-220). So here, the People have failed to demonstrate how government interference with the practice of personal choice in matters of intimate sexual behavior out of view of the public and with no commercial component will serve to advance the cause of public morality or do anything other than restrict individual conduct and impose a concept of private morality chosen by the State.”
And again (p 490) : “In sum, there has been no showing of any threat, either to participants or the public in general, in consequence of the voluntary engagement by adults in private, discreet, sodomous conduct. Absent is the factor of commercialization with the attendant evils commonly attached to the retailing of sexual pleasures; absent the elements of force or of involvement of minors which might constitute compulsion of unwilling participants or of those too young to make an informed choice, and absent too intrusion on the sensibilities of members of the public, many of whom would be offended by being exposed to the intimacies of others.”
While Onofre deals with a penal statute, and we are here concerned with an adult adoption, it may, nevertheless, be proclaimed with equal voice that judicial interference with the statutory right of adult adoption, because of the sexual preference of the parties, out of view of the public, and not at all connected with their reasons for an adoptive relationship, will not advance the cause of public morality.
Onofre is dispositive of the public policy issue raised in Stevens vis-á-vis a violation of the Penal Law, as consensual adult homosexuality is no longer a crime in New York State. In the opinion of this court, Onofre is likewise depositive of the public morality issue, although it deals with the Penal Law and not with the adoption statute. (It is interesting, in this regard, that the weight of authority in other jurisdiction, appears to be against the notion that adult adoptions should be denied on public policy grounds. (See Matter of Berston, 296 Minn 24; Collamore v Learned, 171 Mass 99; Bedinger v Graybill's Executor & Trustee, 302 SW2d 594 [Ky]; Greene v Fitzpatrick, 220 Ky 590.)
*800 For all the reasons above stated, the court holds that the “best interests of the child” standard may not be used to thwart an adult adoption between two competent consenting adults which is sought for valid legal and economic reasons and further, that there are no public policy or public morality considerations which operate as a bar to such an adoption.
Accordingly, the adoption will be granted. The clerk is to notify the parties and counsel and set a date for a final order of adoption.