OPINION OF THE COURT
Mortimer Getzels, J.
This is an application for final approval of a petition by an adult male, age 32, to adopt an adult male, age 43. Shortly after they became acquainted in August, 1978, the adoptive parent gave up his apartment and moved in with the adoptive child. The parties live together in a homosexual life-style. The parents of the adoptive child are deceased. In their relationship the adoptive parent assumed a protective role toward him. One practical benefit of adoption would be to bring the adoptive child in compliance with the standard clause in his apartment lease restricting occupancy to tenant and members of the tenant’s immediate family. However, the underlying motivation for the adoption, as articulated by counsel, is that the parties desire to formalize through this proceeding a bonding and commitment to each other which they openly express. It is urged that adoption may be granted for emotional and symbolic purposes.
The source of the law of adoption can be traced back to the Code of Hammurabi in ancient Babylonia.[1] Adoption was widely practiced by the Egyptians, Greeks and Romans.[2] The Roman law of adoption, as modified by Justinian, was incorporated into French and Spanish law,[3] but *321 was unknown to the common law of England.[4] Hence, in the United States, adoption exists solely by virtue of statute.[5]
Conformably, adoption in New York is “solely the creature of, and regulated by, statute law”. (Matter of Eaton, 305 NY 162, 165.)[6] The adoption statute of New York[7] has as its genesis chapter 830 of the Laws of 1873, the first general adoption statute in this State.[8] Numerous amendments followed,[9] the most important of which, for the purposes here, was promulgated in 1915 and authorized the adoption of adults.[10]
Despite the trend of the Legislature to broaden the basis of adoption as evidenced by the afore-mentioned amendment and to loosen the restrictions on adoption as perceived in more recent amendments,[11] the purely statutory nature of the proceeding does not permit the court to exercise a like liberality on its own. Rather, as in “all statutory proceedings, there must be a strict observance of the statutory requirements.” (Matter ofSantacose, 271 App Div 11,16.)[12] The court may not create a right to adopt not bestowed by the Legislature,[13] nor may it approve an adoption which does not conform to the statute.[14]
In the instant case, the court is being asked to approve an adoption of an adult by another, younger adult. While there is not statute explicitly barring this kind of age discrepancy,[15] approval of such an adoption would violate *322 the legislative intent of the Domestic Relations Law and do violence to the public policy that generates this State’s laws on adoption. Clearly, “[elmbodied in our adoption statute is the fundamental social concept that the relationship of parent and child * * * may be established, independently of blood ties, by operation of law, and that has been part of the public policy of this state since 1887”.[16] Repeatedly the courts of this State have held that the purpose of the adoption statute is to create a parent-child relationship, thereby promoting the welfare of the adoptee.[17] Where adoption will not result in the creation of a parent-child relationship, the court must disapprove the petition.
The court is most sympathetic to the yearning of two decent people living exemplary, productive lives who are seeking to obtain some legal recognition of the bond that exists between them. It is mindful that what consenting adults do sexually in private has been decriminalized on constitutional grounds.[18] The relationship is no longer what it was for Oscar Wilde and Lord Alfred Douglas — the love that dares not speak its name. But a statutory mechanism for conferring status on the relationship, with concomitant rights and obligations, is yet to be devised. It would pose a formidable problem of draftsmanship, if indeed it was determined that such legislation would serve some societal purpose.
Final approval is denied. The petition is dismissed.

. Matter of Souers (135 Misc 521).

. Carpenter v Buffalo Gen. Elec. Co. (213 NY 101).

. Matter of Thorne (155 NY 140).

. Matter of Upjohn (304 NY 366).

. Carroll v Collins (6 App Div 106); United States Trust Co. of N. Y. v Hoyt (150 App Div 621); 2 CJS, Adoption, § 3; NY Jur 2d, Interim Topics, Adoption, § 2.

. See, also, Matter of Martz (102 Misc 2d 102).

. Domestic Relations Law,, art 7.

. Prior to 1873, certain charitable institutions were authorized to place out children for adoption. (See L 1849, ch 244; Carroll v Collins, 6 App Div 106, supra.)

. For a thorough examination of the changes in the adoption law from 1873 to 1920, see Matter of Kingsbury (192 App Div 206, affd 230 NY 580).

. L 1915, ch 352, amdg Domestic Relations Law, §§ 110, 114.

. E.g., Domestic Relations Law, § 111-a, as amd by L 1977, ch 862, §§ 3-9; L 1980, ch 575, §§ 4-6.

. See, also, Murphy v Brooks (120 Misc 704).

. Adoption is not a right, but a privilege granted by the Legislature (Matter of Pierro, 173 Misc 123.)

. Adams v Nadel (124 NYS2d 427); Matter of Reed (106 NYS2d 125).

. See 2 CJS, Adoption, § 13, which cites the adoption laws of California and New Jersey as requiring that an adoptive parent be a certain number of years older than the *322 adoptee; see, also, 2 CJS, Adoption, § 15, in which New Jersey’s statute barring the adoption of an adult by a single person is cited.

. Matter of Upjohn (304 NY 366, 373, supra).

. Caruso v Caruso (175 Misc 290); Matter of Upjohn (supra); Matter of Wood v Howe (15 Misc 2d 1048); Matter of Male F. (97 Misc 2d 505); Samuels, Family Court Law and Practice in New York (rev ed), §318.

. People v Onofre (51 NY2d 476).