# In the Matter of ADULT ANONYMOUS II.

First Department, July 8, 1982

**APPEARANCES OF COUNSEL**

*William J. Thom* of counsel (*Lambda Legal Defense* and *Education Fund, Inc.,* attorneys), for appellants.

*Trudi Mara Schleifer* of counsel (*Leonard Koerner* with her on the brief; *Frederick A.O. Schwarz, Jr., Corporation Counsel,* attorney), for respondent.

**OPINION OF THE COURT**

ASCH, J.

This is an appeal from an order of the Family Court which dismissed a petition for the adoption of a 43-year-old male (Mr. H) by a 32-year-old male (Mr. S). While the adoption statute (Domestic Relations Law, art 7) does not expressly prohibit such adoptions, the Family Court denied the petition for adoption on public policy grounds (111 Misc 2d 320).

Adoption exists in New York solely by virtue of statute and no person may be adopted except pursuant to statute (Domestic Relations Law, § 110; NY Jur 2d, Interim Topics, Adoption, § 2, p 3; see, e.g., *Matter of Malpica-Orsini,* 36 NY2d 568, 570; *Matter of Eaton,* 305 NY 162, 165).

Section 110 of the Domestic Relations Law, describing who may adopt, expressly provides: "An adult unmarried person or an adult husband and his adult wife together may adopt another *person*" (emphasis added). The definitional section states: " 'Adoptive parent' or 'adoptor' shall mean a *person* adopting and 'adoptive child' or 'adoptee' shall mean a *person* adopted." (Domestic Relations Law, § 109, subd 1; emphasis added.) An amendment of the adoption statute, as early as 1915, specifically allowed the adoption of an adult. (L 1915, ch 352; *Matter of Kingsbury,* 192 App Div 206, affd 230 NY 580; *Stevens v Halstead,* 181 App Div 198.)

The court below stated (111 Misc 2d 320, 321-322, *supra*) as part of its rationale in denying the petition that "approval of such an adoption would violate the legislative intent of the Domestic Relations Law and do violence to the public policy that generates this State's laws on adoption." It further held (p 322) "[w]here adoption will not result in the creation of a parent-child relationship, the court must disapprove the petition." However, neither the statute nor the case law enumerates such bases for denying an adoption.

The law is well settled that adoption of an adult by an adult is permissible so long as the parties' purpose is neither insincere nor fraudulent. (See Adoption of Adult, Ann., 21 ALR3d 1012; *Stevens v Halstead,* 181 App Div 198, *supra.*)

A recent pronouncement on the subject was *Matter of Anonymous* (106 Misc 2d 792). "New York is very much in the mainstream of jurisdictions in its simplified approach to adult adoptions, and in having almost no statutory procedural restrictions for such adoptions" (*Matter of Anonymous, supra,* p 797). Adoption is defined as a "legal proceeding whereby a person takes another person into the relation of child and thereby acquires the rights and incurs the responsibilities of parent in respect of such other person." (Domestic Relations Law, § 110.)

"This definition is broad enough to encompass and justify the legal and economic relationship the parties here seek to create and which the Legislature has seen fit to allow * * * the Legislature by its deliberately broad defi-

nition of an adoption proceeding, has taken notice of the many legal and economic purposes which may motivate an adult adoption". (*Matter of Anonymous, supra,* at p 797.)

The statute requires that the court is satisfied that the "best interests of the child will be promoted by granting an order of adoption". (Domestic Relations Law, § 116, subd 4.) The oft-quoted judicial standard used in measuring the adoption of an adult by an adult is that "the adoption will promote the moral and temporal interests of the person to be adopted." (*Stevens v Halstead, supra,* at p 202.) This is the legal framework against which the proposed adoption at bar must be measured.

The two men have lived together in what was originally Mr. H's apartment for three years. They consider their lifestyle as creating a "family unit". The probation report states that "it appears that Mr. S (the putative father) is the more aggressive open and direct member of this family and does not hesitate to take the leadership and the initiative in most of the situations; Mr. H appears to be the more passive member of the family, somewhat agreeing and acquiescing to Mr. S's dictates. Mr. S had indicated that despite the fact that Mr. H is older by some 9 years [*sic*], that he feels that Mr. H's parents have been dead for a considerable number of years and that Mr. H has a slight speech impediment, stuttering, and that he needs more looking after". "There is no question that the two adults have made a commitment at least for the past 2½ years".

Undoubtedly, the pair wish to express in a "tangible and open fashion a bonding and emotional commitment which they wish to formalize in this proceeding." There is then the question of the apartment. The building in which the men reside is about to go co-op. The landlord has been evicting tenants with minor violations of their leases. Appellant's apartment, leased under Mr. H's name, contains a clause that only members of his immediate family may occupy the apartment, and the parties fear impending eviction. They wish to remain in the apartment and purchase it when it does go co-op. This is not a frivolous consideration. (Cf. *Hudson View Props. v Weiss,* 86 AD2d 803.)

Historically, more frequently than not, adoption has served as a legal mechanism for achieving economic, political and social objectives rather than the stereotype parent-child relationship. (Encyclopedia Brittanica, Adoption, p 97 [15th ed, 1974].) Adoption is often utilized by adults for strictly economic purposes, especially inheritance. Other considerations include insurance, tax impact and, in this case, the apartment. Such a material concern is one of sober life reality and should not be regarded by the court as a cynical device to evade the strictures of the parties' leases or the policy of the adoption law.

The inheritance factor also plays a role in this case, as it did in *Matter of Anonymous (supra)*. There, the younger man became the father because he did not wish to affect his rights under his mother's will, then being probated. In the case at bar, the younger Mr. S wishes to become the father so as not to affect his legal relationship with his parents. Mr. H's parents are deceased.

All of the foregoing considerations coincide with the "best interests" standard. When dealing with adults, the "best interests" include the legal and economic purposes sought to be achieved by the parties, rather than, for instance, the standards a court would apply to a neglected minor child. (*Matter of Anonymous, supra,* at pp 797-798.)

The parties in the instant case have made a well-thought-out decision to proceed with this adoption. They have considered all the legal consequences and appear to have the advice of counsel. They have provided for the social and economic realities of their situation and adoption can well be said to be in their "moral and temporal interest".

At first blush it may seem to be a perversion of the adoption process for-lovers to adopt one another. However, adoption has been sanctioned between adults, in general, and lovers in particular. The New York statute specifically allows an adult to be adopted, as noted *supra,* and, unlike other jurisdictions, sets up no proscriptions about the ages of the parties. (Cf. Uniform Adoption Act, 9 Uniform Laws Ann [1979 ed], pp 11-55; Idaho Code, § 16-1502, which require the adoptor to be at least 10 years older than the

adoptee.) New York has allowed lovers to adopt (*Matter of Anonymous, supra*). In *Stevens v Halstead* (*supra*) the court did not decide that a sexual relationship standing alone would bar an adoption, rather it was a fraudulent inducement to be included in inheritance, which was the main basis for the decision. The court also was influenced by the fact that the parties were committing adultery, since the putative daughter was married to another man.

Other jurisdictions are split on the issue. An early Kentucky case specifically held that an adoption of a mistress was permissible. (*Greene v Fitzpatrick,* 220 Ky 590 [1927]; see, also, *Matter of Vasconi,* 73 Pa D & C 119 [1950].) Both of these cases mention that fraud in disclosing the relationship or otherwise obtaining the adoption would annul the adoption. In *Bedinger v Graybill's Executor & Trustee* (302 Sw2d 594 [Ky, 1957]) a man was even allowed to adopt his wife. The Kentucky statute, similar to the one in New York, allowed any adult to adopt any other person. While noting (p 598) the "apparent absurdity" of the situation and that "[w]e do not know of a case of adoption so bizarre as this", the Kentucky court authorized the adoption. The court stated "[n]either the cleverness of the scheme [of inheritance], nor the incongruity of the legal status of parent and child, can lead the court away from the fact that the adoption was *within the authorization of the statute."* (*Bedinger v Graybill's Executor & Trustee, supra,* at p 600; emphasis added; cf. *Matter of Jones,* __ RI __, 411 A2d 910 [1980].)

Incest is only a makeweight issue in this case. The New York incest statute is limited and does not proscribe a relationship such as here. Section 5 of the Domestic Relations Law prohibits relations only between ancestor and descendant; brother and sister; and aunt/uncle-niece/nephew. Incest in general involves blood relatives. And, of course, the taboo against incest, grounded in eugenics (see Freud, Totem and Taboo [tr. by Strachey; N. Y., 1952]), has little application in a relationship which can hardly result in offspring.

Homosexual relations in private are now constitutionally protected in New York (*People v Onofre,* 51 NY2d 476) under the right to privacy. In any event, the parties herein

do not seek the adoption in order to cultivate their sexual relationship. They wish to formalize themselves as a family unit, for the purposes of publicly acknowledging their emotional bond and more pragmatically to unify their property rights. Formalization of the relationship has other beneficial consequences. One of these parties may become ill or be hospitalized. At many institutions only family members can visit. Consent for medical or other procedures may be required. Again, only a family member has authority to give such consent.

The "nuclear family" arrangement is no longer the only model of family life in America. The realities of present day urban life allow many different types of nontraditional families. The statutes involved do not permit this court to deny a petition for adoption on the basis of this court's view of what is the nature of a family. In any event, the best description of a family is a continuing relationship of love and care, and an assumption of responsibility for some other person. Certainly that is present in the instant case.

Accordingly, the order of the Family Court, New York County (GETZELS, J.), entered November 4, 1981, dismissing the petition, should be reversed, on the law, and the petition granted, without costs.

SULLIVAN, J. P. (dissenting). I believe that the Family Court correctly withheld approval of this petition for adoption and would affirm its determination. In my view, the use of adoption to accomplish what is sought here is a subversion of the adoption process.

The proposed adoptive father, Mr. S, 32 years of age, and the proposed adoptive son, Mr. H, 43 years of age, have been involved in a homosexual relationship for the past three years. They offer two reasons for wanting to enter into a "parent-child" relationship. They live together in a Manhattan apartment, but the lease, which is in Mr. H's name, limits occupancy to the lessee and the immediate members of his family. Because the landlord has taken "some action against other tenants to enforce that clause", adoption would, under the circumstances, serve the practical purpose of relieving petitioners' anxiety that they might lose their apartment. Secondly, petitioners would

like "to express * * * in a tangible or open fashion a bonding and emotional commitment which they wish to formalize through this proceeding."

Petitioners concede that Mr. S, the younger, is adopting Mr. H, the older, because Mr. S's parents are still both alive. By having the younger adopt the older, the younger's inheritance and succession rights from and through his natural parents are preserved. If the younger were to become the adoptee, those rights would terminate. (See Domestic Relations Law, § 117.) Petitioners, however, have stated their willingness to reverse roles if that would induce a favorable result.

A Family Court probation officer who, pursuant to section 116 of the Domestic Relations Law, conducted an investigation of petitioners' background found that the motivation for the adoption "primarily appear[ed] to be a desire [on the] part of two adult males to maintain a lifestyle without being subject to discrimination and possible eviction from their rental home." At the hearing on the petition, when asked how the proposed adoption came within the statutory purpose of adoption, that is, the creation of a parent-child relationship, petitioners' counsel stated that adoption could be for "symbolic and emotional purposes and for practical purposes as well."

Adoption was unknown at common law. (*Matter of Malpica-Orsini*, 36 NY2d 568, 570, and cases cited therein.) In New York it is "solely the creature of, and regulated by, statute law". (*Matter of Eaton*, 305 NY 162, 165; see, also, *United States Trust Co. of N. Y. v Hoyt*, 150 App Div 621; *Carroll v Collins*, 6 App Div 106.) It has its origins in chapter 830 of the Laws of 1873 (§§ 1, 2, 13). In 1915 the Legislature for the first time authorized the adoption of a "person of the age of twenty-one years and upwards" by an amendment to section 110 of the Domestic Relations Law.* (L 1915, ch 352; see *Matter of Kingsbury*, 192 App Div 206, affd 230 NY 580.) Under present New York law, "[a]n

---

* A subsequent amendment in 1938 of section 110 of the Domestic Relations Law substituted the word "person" to characterize the prospective adoptee. (L 1938, ch 606, § 1; see *Matter of Anonymous* 177 Misc 683.)

adult unmarried person * * * may adopt another person." (Domestic Relations Law, § 110.)

Adoption is a legislative privilege, not a right. (See *Matter of Pierro,* 173 Misc 123.) As in "all statutory proceedings, there must be a strict observance of the statutory requirements." (*Matter of Santacose,* 271 App Div 11, 16.) That entitlement to approval of an adoption petition is not absolute is manifest from New York's statutory scheme on adoptions. For instance, even in an adoption between adults, after a petition is filed and "it appears that the adoption may be in the best interests of the child", the court must order an investigation of such factors as "the familial, social, religious, emotional and financial circumstances of the adoptive parents which may be relevant to a determination of adoption." (Domestic Relations Law, § 116, subds 2, 3, par [f].)

While the statute concededly contains virtually no procedural restrictions on adult adoptions (see *Matter of Anonymous,* 106 Misc 2d 792), we cannot overlook that adoption is "the legal proceeding whereby a person takes another person into the relation of child and thereby acquires the rights and incurs the responsibilities of parent in respect of such other person" (Domestic Relations Law, § 110.) Adoption is a recognition of "the fundamental social concept that the relationship of parent and child, with all the personal and property rights incident to it, may be established, independently of blood ties, by operation of law". (*Matter of Upjohn,* 304 NY 366, 373.)

Judged by this standard, the petition must fail. Petitioners do not make even a pretense of any intention to establish a parent-child relationship. Adoption is for them a means of obtaining a legal status for their homosexual relationship. While there is no preadoption litmus test to assess whether any prospective adoptive parent is capable of accepting the rights and assuming the responsibilities of a parent, an adoption petition should be rejected where, as here, no showing is made that a parent-child relationship, even in the broadest sense, is intended. The statutory words "parent" and "child" are more than mere labels to be fastened interchangeably. The Legislature must have in-

tended them to have a meaning (see *Zachary v Macy & Co.,* 39 AD2d 116, 119, and cases cited therein; see, also, McKinney's Cons Laws of NY, Book 1, Statutes, § 231), even where the adoptee is an adult; otherwise the Legislature would have removed the parent-child relationship requirement for adults. Little need be said for the attempt to use the specter of eviction as a basis for adoption. It is nothing more than a cynical distortion of the function of adoption.

Quite clearly, if the Legislature wished to permit homosexuals to use adoption as a procedure by which they could legitimatize their emotional attachment, it could have made such provision at any time since the adoption law was enacted in 1873. It has not. Indeed, the proscriptions against consensual sodomy were struck down by the Court of Appeals only as recently as December, 1980. (*People v Onofre,* 51 NY2d 476.) It strains credulity to believe that a Legislature which continued the proscription against homosexual activity could, at the same time, have envisioned the adoption process as a method by which a homosexual relationship could be formalized in the eyes of the law. "[Courts should] not blindly apply the words of a statute to arrive at an unreasonable or absurd result. If the statute is so broadly drawn as to include the case before the court, yet reason and statutory purpose show it was obviously not intended to include that case, the court is justified in making an exception through implication." (*Williams v Williams,* 23 NY2d 592, 599.)

To date no New York appellate court has resolved the issue of whether lovers, homosexual or heterosexual, should be permitted to adopt each other. The Kentucky adoption statute, which the majority cites, does not contain the provision found in the New York statute that "[a]doption is the legal proceeding whereby a person takes another person into the relation of child and thereby acquires the rights and incurs the responsibilities of parent in respect of such other person." Thus, Kentucky does not emphasize the purpose explicit in the New York adoption statute, and this perhaps explains why a Kentucky court found itself bound to approve an adoption of a mistress (*Greene v Fitzpatrick,* 220 Ky 590), and of a wife (*Bedinger*

*v Graybill's Executor & Trustee,* 302 SW2d 594), notwithstanding the "absurdity of the adoption" (at p 598). Rhode Island, on the other hand, has rejected a petition for adoption between paramours by finding that the Legislature could not have intended such " 'a sardonically ludicrous result' ", and refusing to "be a witness to what appears to be a perversion of the adoption process established by the Legislature." (*Matter of Jones,* 411 A2d 910, 911.)

Adoption was never intended as a haven where parties might shelter emotional relationships for which no statutory provision has been made. If the homosexual relationship is to receive legal sanction as a family unit, such recognition must come from the Legislature, and not the courts through the guise of adoption.

CARRO, SILVERMAN and BLOOM, JJ., concur with ASCH, J.; SULLIVAN, J. P., dissents in an opinion.

Order, Family Court, New York County, entered on November 4, 1981, reversed, on the law, and the petition for adoption granted, without costs and without disbursements.