Meyer, J.
(dissenting). Having concluded in People v
Onofre (51 NY2d 476, 490) that government interference with a private consensual homosexual relationship was unconstitutional because it would not “do anything other than restrict individual conduct and impose a concept of private morality chosen by the State”, the court now inconsistently refuses to “permit the employment of adoption as the legal formalization of an adult relationship between sexual partners under the guise of parent and child.” (Majority opn, at p 236.)
*240 The history and background of the adoption laws is sufficiently spelled out by Justice Sidney H. Asch in Matter of Adult Anonymous II (88 AD2d 30) and Family Court Judge Leon Deutsch in Matter of Anonymous (106 Misc 2d 792) and need not be further developed here. I write, therefore, essentially to emphasize the extent to which, in my view, the majority misconceives the meaning and purpose of article 7 of the Domestic Relations Law.
Under that article the relationship of parent and child is not a condition precedent to adoption; it is rather the result of the adoption proceeding. This is clear from the provisions of sections 110 and 117. The second unnumbered paragraph of section 110 defines “adoption” as “the legal proceeding whereby a person takes another person into the relation of child and thereby acquires the rights and incurs the responsibilities of parent in respect of such other person,” (emphasis supplied) and section 117, which spells out the “effect of adoption,” provides in the third unnumbered paragraph of subdivision 1 that, “The adoptive parents or parent and the adoptive child shall sustain toward each other the legal relation of parent and child and shall have all the rights and be subject to all the duties of that relation including the rights of inheritance from and through each other and the natural and adopted kindred of the adoptive parents or parent” (emphasis supplied).[1] From those provisions and the statement in the opening sentence of section 110 that, “An adult unmarried person * * * may adopt another person”, no other conclusion is possible than that the Legislature has not conditioned adult adoption upon there being a parent-child relationship, but rather has stated that relationship to be the result of adoption. Indeed, had it intended to impose limitations of age, consent of others, sexual orientation, or other such condition upon adult adoption, it could easily have done so.[2]
*241 Nor will it do to argue, as did Justice Joseph P, Sullivan dissenting in Matter of Adult Anonymous II (88 AD2d, at p 38), that because the Legislature that provided for adoption of adults continued the proscription against homosexuality, it did not envision adoption as a means of formalizing a homosexual relationship. The wording of section 110 being sufficiently broad to permit such formalization once the prior criminal proscription has been declared unconstitutional, to deny it that effect is to ignore the rule that a court is “not at liberty to restrict by conjecture, or under the guise or pretext of interpretation, the meaning of” the language chosen by the Legislature (Department of Welfare v Siebel, 6 NY2d 536, 543, app dsmd 361 US 535; accord Allen v Minskoff, 38 NY2d 506, 511). It is “incumbent upon the courts to give effect to legislation as it is written, and not as they or others might think it should be written” (People v Woman’s Christian Assn., 56 AD2d 101, 104, on further appeal 59 AD2d 1005, affd 44 NY2d 466; Lawrence Constr. Corp. v State of New York, 293 NY 634, 639).
Contrary to the suggestion of the majority that the adoption statute must be strictly construed (majority opn, at p 238), it “has been most liberally and beneficently applied” (Matter of Malpica-Orsini, 36 NY2d 568, 572, app dsmd sub nom. Orsini v Blasi, 423 US 1042). True, Stevens v Halstead (181 App Div 198) held its use for the purpose of passing property from a 70-year-old physically infirm man to a married 47-year-old woman with whom he was living in an adulterous relationship to be improper. But that holding was predicated on the conception that it was “against public policy to admit a couple living in adultery to the relation of parent and child” and because “[t]his meretricious relationship, and the undue influence which imposed the will of defendant on decedent, condemn the adoption.” (Id., at p 201.) Here, however, there is no suggestion of undue influence and the relationship, which by the present decision is excised from the adoption statute’s broad wording, has, since the Onofre decision, been subject to no legal impediment. That it remains morally offensive to many cannot justify imposing upon the statute a limita *242 tion not imposed by the Legislature (People v Onofre, 51 NY2d, at p 490; Department of Welfare v Siebel, 6 NY2d, at p 543).
What leads to the majority’s conclusion that the relationship of the parties “is utterly incompatible with the creation of a parent-child relationship between them” (at p 239) is that it involves a “nonmarital sexual relationship” (at p 238). But nothing in the statute requires an inquiry into or evaluation of the sexual habits of the parties to an adult adoption or the nature of the current relationship between them. It is enough that they are two adults who freely desire the legal status of parent and child. The more particularly is this so in light of the absence from the statute of any requirement that the adopter be older than the adoptee, for that, if nothing else, belies the majority’s concept that adoption under New York statute imitates nature, inexorably and in every last detail.
Under the statute “the relationship of parent and child, with all the personal and property rights incident to it, may be established, independently of blood ties, by operation of law” (Matter of Malpica-Orsini, 36 NY2d, at pp 571-572); existence of a parent-child relationship is not a condition of, but a result of, adoption. The motives which prompt the present application (see n 1 to majority opn) are in no way contrary to public policy; in the words of Mr. Justice Holmes, they are “perfectly proper” (Collamore v Learned, 171 Mass 99, 100). Absent any contravention of public policy, we should be “concerned only with the clear, unqualified statutory authorization of adoption” (Bedinger v GraybilVs Executor, 302 SW2d 594, 599 [Ky]; Matter of Berston, 296 Minn 24, 27) and should, therefore, reverse the Appellate Division’s order.
Judges Jones, Simons and Kaye concur with Judge Jasen; Judge Meyer dissents and votes to reverse in a separate opinion in which Chief Judge Cooke concurs; Judge Wachtler taking no part.
Order affirmed, with costs.

. Reference in the latter provision to “adoptive parent” and “adoptive child” does not require a contrary conclusion, for subdivision 1 of section 109 defines the former to “mean a person adopting” and the latter to “mean a person adopted.”

. (Cf. Cal Civ Code, § 227p, subd [a] [“Any adult person may adopt any other adult person younger than himself or herself”]; Conn Gen Stats Ann, § 45-67 [“Any person eighteen years of age or older may by written agreement with another person at least eighteen years of age but younger than himself”]; Mass Gen Laws Ann, ch 210, § 1 [“A person of full age may * * * adopt as his child another person younger than himself”]; Nev Rev Stats, § 127.190 [“any adult person may adopt any other adult younger than himself”]; see 1953 version of the Uniform Adoption Act, 9 ULA [Master ed], p 14; *241 Wadlington, Minimum Age Difference as a Requisite For Adoption, 1966 Duke LJ 392, 404-406.)