Matter of Marian T. (Lauren R.) (2018 NY Slip Op 08002)





Matter of Marian T. (Lauren R.)


2018 NY Slip Op 08002


Decided on November 21, 2018


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: November 21, 2018

526577

[*1]In the Matter of MARIAN T. 
Calendar Date: October 12, 2018

Before: Garry, P.J., Devine, Clark, Aarons and Pritzker, JJ.


Sheila E. Shea, Mental Hygiene Legal Service, Albany (Cailin Connors Brennan of counsel), for appellant.
Douglas A. Eldridge, Delmar, for respondents.



MEMORANDUM AND ORDER
Pritzker, J.
Appeal from an order of the Surrogate's Court of Otsego County (Burns, S.), entered May 31, 2017, which granted petitioners' application, in a proceeding pursuant to Domestic Relations Law article 7, for the adoption of Marian T.
Petitioners run a family care home, a program operated by the Office for People With Developmental Disabilities (hereinafter OPWDD). They commenced this proceeding for the adoption of respondent, a 64-year-old woman with a profound intellectual disability and very limited verbal ability who is a resident in their family care home [FN1]. Surrogate's Court appointed Mental Hygiene Legal Service (hereinafter MHLS) to represent respondent in the adoption proceeding and, prior to a hearing on the petition, the court granted a motion by MHLS for a psychological evaluation of respondent. Petitioners also had respondent evaluated and subsequently moved for the appointment of a guardian ad litem. MHLS objected and cross-moved to request that the court conduct an interview of respondent in the presence of counsel. The court denied petitioners' motion, but granted the cross motion and, after reviewing the psychological evaluations and interviewing respondent, the court determined that there was [*2]"good cause to appoint a guardian ad litem." After a hearing, Surrogate's Court granted the petition. Respondent now appeals and we affirm, albeit for different reasons.
"[P]resently the law simply provides that an unmarried adult or married adults together may adopt another person without any restriction of the age of the adoptive child or adoptee" (Matter of Robert Paul P., 63 NY2d 233, 237 [1984] [internal quotation marks, emphasis and citation omitted]; Domestic Relations Law § 110). This is consistent with the statutory definition of "adoptive child" or "adoptee" as "a person adopted," without limitation as to age (Domestic Relations Law § 109 [1]). When an adoptee is over the age of 14, his or her consent is required, "unless the judge or surrogate in his [or her] discretion dispenses with such consent" (Domestic Relations Law § 111 [1] [a] [emphasis added])[FN2]. Therefore, because respondent is over the age of 14, the court had express statutory authority to dispense with her consent.
This conclusion is well-grounded in sound statutory construction and avoids categorically prohibiting adoptions of those who are over the age of 14 but are incapable of giving consent, including an entire class of adoptees who are so severely disabled that they simply lack the ability to communicate such consent. The factual scenario present here is precisely the situation where a judge or surrogate should be, and is, authorized to exercise discretion and waive an adoptee's consent. This is not to say that a judge or surrogate should automatically waive consent when adjudicating a case with an adoptee incapable of consent; rather, given that the facts are necessarily sui generis, the determination as to whether consent should be waived is encompassed within the same best interests analysis that a judge or surrogate must undertake when making the determination of whether to approve the adoption (see Domestic Relations Law § 116 [4]; Matter of Adult Anonymous II, 88 AD2d 30, 32-33 [1982]). Here, though not specifically stated, it appears that Surrogate's Court determined that respondent lacked capacity to consent, and, in granting the petition, implicitly dispensed with her consent. Based upon the record before us, and in light of the thorough best interests analysis undertaken by the court, respondent's consent was properly dispensed with.
As part of its best interests analysis, Surrogate's Court
requested the opinion of the guardian ad litem who, prior to the hearing, met with petitioners and respondent and reviewed the petition for adoption, the psychological evaluations and a redacted version of a report regarding an incident that led to the temporary removal of respondent from petitioners' home. Accordingly, the guardian ad litem determined that "it [was his] opinion and recommendation that it [was] in [respondent's] best interest[s] to be adopted . . . by petitioners."[FN3]
Also, petitioners both testified during the hearing and, as the court noted, it was obvious that petitioners had [*3]"great love and affection for [respondent]," one petitioner even "became visibly emotional when describing his relationship with [respondent]." While MHLS expressed concern that respondent, if adopted, would no longer be provided the services that she required, it is clear from the record that adoption would not render respondent ineligible for all services that she was currently receiving. It is also evident that, while adoption could affect some benefits received by respondent, her Medicaid and Medicare would continue and, financially, she would be in a comparable situation if adopted. Further, while MHLS expressed legitimate concerns about the lack of institutional safeguards against abuse and exploitation should petitioners adopt respondent, there is nothing in the record to indicate that petitioners have violated those safeguards in the 12 years that respondent has lived in their family care home or would be unable to keep respondent safe. Although there is no specific guideline regarding best interests in an adoption proceeding, courts generally look to whether the person feels loved, safe, happy and content (cf. Matter of Haylee RR., 47 AD3d 1093, 1095-1096 [2008]; Matter of Dessa F., 35 AD3d 1096, 1097-1098 [2006]; Matter of George L. v Commissioner of Fulton County Dept. of Social Servs., 194 AD2d 955, 956 [1993]), which respondent has and feels with petitioners. Although respondent cannot articulate consent, there is no reason to conclude that these cognitive limitations prevent her from otherwise desiring, experiencing and feeling the warmth and deep emotional attachment to a family. As such, because the adoption is in respondent's best interests, but she is unable to consent, her consent was unnecessary and, as such, we find that the adoption was properly approved.
Garry, P.J., Devine, Clark and Aarons, JJ., concur.ORDERED that the order is affirmed, without costs.



Footnotes

Footnote 1:
 Accompanying the petition was a consent to adoption form "signed" with an "x" by respondent.

Footnote 2: Domestic Relations Law § 111 (4) is not germane to this analysis as it merely eliminates the requirement of consent by parents and, if applicable, an authorized agency having lawful custody of the adoptive child, neither of which is alleged to have been required here.

Footnote 3:Surrogate's Court erred in holding that the guardian ad litem possessed "implied authority to consent to the adoption." To be clear, no such authority exists nor is it relevant that the guardian ad litem may be acting in a parens patriae role (see generally Vincent C. Alexander, Practice Commentaries, McKinney's Cons Laws of NY, CPLR 1207). Whether a judge or surrogate should dispense with consent in an adoption is a uniquely judicial function (see generally Matter of Michael B., 80 NY2d 299, 319 [1992, Bellacosa, J., concurring]), derived through statute, and cannot be delegated.