OPINION OF THE COURT
Jones, J.
These appeals, argued together, present a common question — viz., whether the provision of our State’s Penal Law that makes consensual sodomy a crime is violative of rights protected by the United States Constitution. We hold that it is.
Defendant Onofre was convicted in County Court of Onondaga County of violating section 130.38 of the Penal Law (consensual sodomy) after his admission to having committed acts of deviate sexual intercourse with a 17-year-old male at defendant’s home.[1] The factual admission followed the court’s denial of defendant’s motion to dismiss *484 the indictment on the ground that the statute was an invasion of his constitutionally protected right of privacy and that it denied him equal protection of the laws.
Defendants Peoples and Goss were convicted in Buffalo City Court of violating the consensual sodomy statute after a jury trial at which evidence was adduced that they had engaged in an act of oral sodomy in an automobile parked on a street in the City of Buffalo in the early morning hours. Defendant Sweat was convicted of the same crime after a jury trial in the same court on proof that she had committed a similar act with a male in a truck parked on a street in a residential area of the city about 1:30 a.m. In the cases in Buffalo City Court motions by defendants for dismissals of the informations on the ground that section 130.38 of the Penal Law is unconstitutional because it deprives them of equal protection of the law and denies their right of privacy had been denied.
On appeal by defendants from the judgments of conviction the Appellate Division, Fourth Department, reversed in the case of Onofre and dismissed the indictment, concluding that section 130.38 of the Penal Law was unconstitutional and the County Court of Erie County affirmed the convictions of Peoples, Goss and Sweat, rejecting the claims of unconstitutionality. The order of the Appellate Division should be affirmed; those of County Court should be reversed and the informations dismissed.
The statutes under which these defendants were charged and convicted provide as follows:
“§ 130.38 Consensual sodomy.
“A person is guilty of consensual sodomy when he engages in deviate sexual intercourse with another person.
“§ 130.00 Sex offenses; definitions of terms.
“The following definitions are applicable to this article:
* * * *
“2. Deviate sexual intercourse means sexual conduct between persons not married to each other consisting of contact between the penis and the anus, the mouth and penis, or the mouth and the vulva.”
*485 Because the statutes are broad enough to reach noncommercial, cloistered personal sexual conduct of consenting adults and because it permits the same conduct between persons married to each other without sanction, we agree with defendants’ contentions that it violates both their right of privacy[2] and the right to equal protection of the laws guaranteed them by the United States Constitution.
As to the right of privacy. At the outset it should be noted that the right addressed in the present context is not, as a literal reading of the phrase might suggest, the right to maintain secrecy with respect to one’s affairs or personal behavior; rather, it is a right of independence in making certain kinds of important decisions, with a concomitant right to conduct oneself in accordance with those decisions, undeterred by governmental restraint — what we referred to in People v Rice (41 NY2d 1018, 1019) as “freedom of conduct”. (See Whalen v Roe, 429 US 589, 598-600.) The right, which has been called “the most comprehensive of *486 rights and the right most valued by civilized men” (Olmstead v United States, 277 US 438, 478 [Brandeis, J., dissenting] ), “has been viewed as emanating from the first amendment’s guarantee of freedom of association, NAACP v. Alabama, 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958); and of speech, Stanley v. Georgia, 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969); the fourth amendment, Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); the equal protection clause of the fourteenth amendment, Loving v. Virginia, 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967); the ninth amendment, Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965) (Goldberg, J., concurring); the penumbras of the Bill of Rights, id.; and the concept of liberty guaranteed by the due process clause of the fourteenth amendment, Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973)” (Lovisi v Slayton, 363 F Supp 620, 624, affd 539 F2d 349, cert den 429 US 977, supra).
As recently as 1976 the Supreme Court took pains in Carey v Population Servs. Int. (431 US 678, 684-685) to observe that “the outer limits” of the decision-making aspect of the right of privacy “have not been marked by the Court”, noting however that “among the decisions that an individual may make without unjustified government interference” are personal decisions relating to marriage (Loving v Virginia, 388 US 1, 12, supra), procreation (Skinner v Oklahoma, 316 US 535, 541-542), contraception (Eisenstadt v Baird, 405 US 438, 453-454), family relationships (Prince v Massachusetts, 321 US 158, 166), child rearing and education (Pierce v Society of Sisters, 268 US 510, 535; Meyer v Nebraska, 262 US 390, 399), and abortion (Roe v Wade, 410 US 113, 154, supra).
The People are in no disagreement that a fundamental right of personal decision exists; the divergence of the parties focuses on what subjects fall within its protection, the People contending that it extends to only two aspects of sexual behavior — marital intimacy (by virtue of the Supreme Court’s decision in Griswold v Connecticut [381 US 479, supra]) and procreative choice (by reason of Eisenstadt v Baird [405 US 438, supra] and Roe v Wade [410 US *487 113, swpra\). Such a stance fails however adequately to take into account the decision in Stanley v Georgia (394 US 557, supra) and the explication of the right of privacy contained in the court’s opinion in Eisenstadt. In Stanley the court found violative of the individual’s right to be free from governmental interference in making important, protected decisions a statute which made criminal the possession of obscene matter within the privacy of the defendant’s home. Although the material itself was entitled to no protection against government proscription (Roth v United States, 354 US 476) the defendant’s choice to seek sexual gratification by viewing it and the effectuation of that choice within the bastion of his home, removed from the public eye, was held, to be blanketed by the constitutional right of privacy. That the right enunciated in Griswold v Connecticut (381 US 479, supra) to make decisions with respect to the consequence of sexual encounters and, necessarily, to have such encounters, was not limited to married couples was made clear by the language of the court in Eisenstadt v Baird (405 US 438, 453, supra): “It is true that in Gris-wold the right of privacy in question inhered in the marital relationship. Yet the marital couple is not an independent entity with a mind and heart of its own, but an association of two individuals each with a separate intellectual and emotional makeup. If the right of privacy means anything, it is the right of the individual, married or single, to be free from unwarranted governmental intrusion into matters so fundamentally affecting a person as the decision whether to bear or beget a child. See Stanley v. Georgia, 394 U. S. 557 (1969).” In a footnote appended to the Stanley citation the court set out the following quotation from that decision (p 453, n 10):
“ ‘[A]Iso fundamental is the right to be free, except in very limited circumstances, from unwanted governmental intrusions into one’s privacy.
“ * “The makers of our Constitution undertook to secure conditions favorable to the pursuit of happiness. They recognized the significance of man’s spiritual nature, of his feelings and of his intellect. They knew that only a part of the pain, pleasure and satisfactions of life are to be found in *488 material things. They sought to protect Americans in their beliefs, their thoughts, their emotions and their sensations. They conferred, as against the Government, the right to be let alone — the most comprehensive of rights and the right most valued by civilized man.” Olmstead v. United States, 277 U. S. 438, 478 (1928) (Brandeis, J., dissenting).'”
In light of these decisions, protecting under the cloak of the right of privacy individual decisions as to indulgence in acts of sexual intimacy by unmarried persons and as to satisfaction of sexual desires by resort to material condemned as obscene by community standards when done in a cloistered setting, no rational basis appears for excluding from the same protection decisions — such as those made by defendants before us — to seek sexual gratification from what at least once was commonly regarded as “deviant” conduct,[3] so long as the decisions are voluntarily made by adults in a noncommercial, private setting. Nor is any such basis supplied by the claims advanced by the prosecution— that a prohibition against consensual sodomy will prevent physical harm which might otherwise befall the participants, will uphold public morality and will protect the in *489 stitution of marriage. Commendable though these objectives clearly are, there is nothing on which to base a conclusion that they are achieved by section 130.38 of the Penal Law. No showing has been made, even in references tendered in the briefs, that physical injury is a common or even occasional consequence of the prohibited conduct, and there has been no demonstration either that this is a danger presently addressed by the statute or was one apprehended at the time the statutory section was enacted contemporaneously with the adoption of the new Penal Law in 1965. Indeed, the proposed comprehensive penal statute submitted to the Legislature by the Temporary Commission on Revision of the Penal Law and Criminal Code dropped all proscription against private acts of consensual sodomy.[4] That the enactment of section 130.38 of the Penal Law was prompted by something other than fear for the physical safety of participants in consensual sodomy is suggested by the statement contained in the memorandum prepared by the chairman of the Temporary Commission: “It would appear that the Legislature’s decision to restore the consensual sodomy offense was, as with adultery, based largely upon the premises that deletion thereof might ostensibly be construed as legislative approval of deviate conduct” (NY Legis Ann, 1965, pp 51-52).
Any purported justification for the consensual sodomy statute in terms of upholding public morality is belied by the position reflected in the Eisenstadt decision in which the court carefully distinguished between public dissemination of what might have been considered inimical to public morality and individual recourse to the same material out of the public arena and in the sanctum of the private home. There is a distinction between public and private morality and the private morality of an individual is not synonymous with nor necessarily will have effect on what is known as public morality (see State v Saunders, 75 NJ 200, 218- *490 220). So here, the People have failed to demonstrate how government interference with the practice of personal choice in matters of intimate sexual behavior out of view of the public and with no commercial component will serve to advance the cause of public morality or do anything other than restrict individual conduct and impose a concept of private morality chosen by the State.
Finally, the records and the written and oral arguments of the District Attorneys as well are devoid of any support for the statement that a prohibition against consensual sodomy will promote or protect the institution of marriage, venerable and worthy as is that estate. Certainly there is no suggestion that the one is a substitute or alternative for the other nor is any empirical data submitted which demonstrates that marriage is nothing more than a refuge for persons deprived by legislative fiat of the option of consensual sodomy outside the marital bond.
In sum, there has been no showing of any threat, either to participants or the public in general, in consequence of the voluntary engagement by adults in private, discreet, sodomous conduct. Absent is the factor of commercialization with the attendant evils commonly attached to the retailing of sexual pleasures; absent the elements of force or of involvement of minors which might constitute compulsion of unwilling participants or of those too young to make an informed choice, and absent too intrusion on the sensibilities of members of the public, many of whom would be offended by being exposed to the intimacies of others. Personal feelings of distaste for the conduct sought to be proscribed by section 130.38 of the Penal Law and even disapproval by a majority of the populace, if that disapproval were to be assumed, may not substitute for the required demonstration of a valid basis for intrusion by the State in an area of important personal decision protected under the right of privacy drawn from the United States Constitution — areas, the number and definition of which have steadily grown but, as the Supreme Court has observed, the outer limits of which it has not yet marked.
The assertion in the dissent that validation of the consensual sodomy statute is mandated by our recent decision *491 in People v Shepard (50 NY2d 640) proceeds from a misconception of our holding in Shepard. In that case we upheld the constitutionality of the statutory proscription against the possession of marihuana as applied to possession by an individual in the privacy of his home, noting the existence of a legitimate controversy with respect to whether marihuana is a dangerous substance. The concurring opinion assembled the impressive evidence of the harmfulness which attends the use of marihuana. On such a record we sustained the right of the Legislature to reach the substantive conclusion that the use of marihuana was indeed harmful and accordingly to impose a criminal proscription based on that predicate. There is in the present case no basis for a counterpart to the statement in Shepard that “the Legislature, following extensive studies and hearings, has specifically found the drug to be sufficiently harmful to warrant punishing its possession in an effort to deter its use” (p 646). By critical contrast neither the People nor the dissent has cited any authority or evidence for the proposition that the practice of consensual sodomy in private is harmful either to the participants or to society in general; indeed, the dissent’s appeal is only to the historical, conventional charactertization which attached to the practice of sodomy.[5] It surely does not follow that, because it is constitutionally permissible to enter the privacy of an individual’s home to regulate conduct justifiably found to be harmful to him, the Legislature may also intrude on such privacy to regulate individual conduct where no basis has been shown for concluding that the conduct is harmful.
As to the denial of defendants’ right to equal protection. Section 130.38 of the Penal Law on its face discriminates between married and unmarried persons, making criminal when done by the latter what is innocent when done by the former. With that distinction drawn, we look to see whether there is, as a minimum, “some ground of difference that rationally explains the different treatment accorded married and unmarried persons” under the statute (Eisen *492 stadt v Baird, 405 US 438, 447, supra).[6] In our view, none has been demonstrated or identified by the People in any of the cases before us. In fact, the only justifications suggested are a societal interest in protecting and nurturing the institution of marriage and what are termed “rights accorded married persons”. As has been indicated, however, no showing has been made as to how, or even that, the statute banning consensual sodomy between persons not married to each other preserves or fosters marriage. Nor is there any suggestion how consensual sodomy relates to rights accorded married persons; certainly it is not evident how it adversely affects any such rights. Thus, even if it be assumed that the objectives tendered by the prosecution are legitimate matters of public concern, no relationship— much less rational relationship — between those objectives and the proscription of section 130.38 of the Penal Law is manifested. The statute therefore must fall as violative of the right to equal protection enjoyed by persons not married to each other.
Little more need be said to dispose of the contention made by the District Attorneys that the statute is a valid exercise of the police power vested in the State, which power, it is asserted, is authorized for the prevention of harm or for the preservation of public morality. No substantial prospect of harm from consensual sodomy nor any threat to public — as opposed to private — morality has been shown.
Finally, we do not plow new ground in the result we reach today. Most recently, the Supreme Court of Pennsylvania, for some of the same reasons that underlie our decision, has reached a similar conclusion even in a case in which the defendants were charged with commission of deviant acts of sexual conduct with members of the audience at performances in a public theatre for which an admission *493 fee had been charged (Commonwealth v Bonadio, 490 Pa 91). Also consistent with the result we reach are the decisions by the Iowa Supreme Court in State v Pilcher (242 NW2d 348 [Iowa]) and by the New Jersey Superior Court in State v Ciuffini (164 NJ Super 145), relying on the earlier case of State v Saunders (75 NJ 200, supra) in which its Supreme Court had invalidated as contrary to the constitutionally protected right of privacy a statute making fornication a criminal offense. Nor is any contrary result compelled by Doe v Commonwealth’s Attorney for City of Richmond (403 F Supp 1199, affd 425 US 901), a civil action in which prayers for a declaratory judgment invalidating and an injunction precluding prosecution under a Virginia sodomy statute, which expressly included consensual sodomy, were denied. Although the District Court in its opinion addressed the constitutionality of the statute and concluded that it was not invalid, its disposition included no declaration of constitutionality, but merely denied the relief requested and dismissed the complaint. A summary affirmance of the dismissal without declaration followed in the United States Supreme Court. In that circumstance the disposition by the Supreme Court does not necessarily signify approval of the reasoning by which the lower court resolved the case (Fusari v Steinberg, 419 US 379, 391 [concurring opn by Burger, Ch. J.]). Apart from the limited precedential value of a summary affirmance (see, e.g., Edelman v Jordan, 415 US 651, 671; Hart & Wechsler, Federal Courts and the Federal System [1977 Supp], at p 112, n 1) in Doe there was lacking any evidence of threatened prosecution of the plaintiffs under the Virginia statute — a factor arguably relevant to their standing to maintain the action (cf. O’Shea v Littleton, 414 US 488). Thus, the affirmance by the Supreme Court of the District Court’s dismissal of the action may have been predicated on a lack of standing on the part of plaintiffs. Subsequent to the decision of the Doe case a member of that court stated that the court had not yet “definitively answered the difficult question whether and to what extent the Constitution prohibits state statutes regulating such behavior (private consensual sexual behavior) among adults” (Carey v Popu *494 lation Servs. Int., 431 US 678, 694, n 17 [opn by Brennan, J., concurred in by a plurality], supra).
That difficult question, to the extent that it is posed by these appeals, is before us now. For the reasons given above, we conclude that the imposition of criminal sanctions such as those contained in section 130.38 of the Penal Law is proscribed by the Constitution of the United States.
Accordingly, on the appeal by the District Attorney of Onondaga County the order of the Appellate Division should be affirmed. On the appeals by defendants Peoples, Goss and Sweat the orders of the Erie County Court should be reversed, the convictions vacated and the informations dismissed.

. Defendant’s conviction was not predicated on a guilty plea as inadvertently recited in the opinion at the Appellate Division.

. We are not unmindful that both District Attorneys seek to draw support from conduct by defendants which they claim either drew the admitted acts of sodomy into the classification of public, not private, conduct or which constituted a waiver of the right to assert a right of privacy. Because our disposition of these appeals rests also on a denial of equal protection rights we need not pass on the contention by the District Attorney of Erie County that the acts committed by defendants Peoples, Goss and Sweat, occurring in vehicles parked on a street or highway at times when traffic might be expected to be light but which could have been observed by a passerby should one have happened on the vehicles and looked inside, lost any claim to being private acts. (On oral argument counsel for the defendants expressly conceded that the acts took place “in public”.) The suggestion by the District Attorney of Onondaga County that because defendant Onofre presumably participated in the taking of photographs of himself while engaging in acts of sodomy and thereafter displayed such photographs to the District Attorney, he was foreclosed from asserting a right of privacy fails to distinguish between the two aspects of the right as subsequently discussed. Neither the photographing nor the display of the pictures (which was done only after charges of sodomy in the first degree and sexual abuse had been laid against him) affected the secluded nature of the conduct, which was done in defendant’s own home free from any observation by the public, although, conceivably, he may thereby have lost any claim to the secrecy aspect of the right to privacy — an aspect he is not now asserting. No distinction between these two aspects was observed in Lovisi v Slayton (363 F Supp 620, affd 539 F2d 349, cert den 429 US 977), the decision which appears to have turned on defendants’ failure to keep the photographs in such a way that their children would be denied access to them, which the court regarded as a breach of defendants’ responsibility to ensure that the seclusion surrounding their acts was preserved (363 F Supp, p 627).

. We express no view as to any theological, moral or psychological evaluation of consensual sodomy. These are aspects of the issue on which informed, competent authorities and individuals may and do differ. Contrary to the view expressed by the dissent, although on occasion it does serve such ends, it is not the function of the Penal Law in our governmental policy to provide either a medium for the articulation or the apparatus for the intended enforcement of moral or theological values. Thus, it has been deemed irrelevant by the United States Supreme Court that the purchase and use of contraceptives by unmarried persons would arouse moral indignation among broad segments of our community or that the viewing of pornographic materials even within the privacy of one’s home would not evoke general approbation (Eisenstadt v Baird, 405 US 438, supra; Stanley v Georgia, 394 US 557, supra). We are not unmindful of the sensibilities of many persons who are deeply persuaded that consensual sodomy is evil and should be prohibited. That is not the issue before us. The issue before us is whether, assuming that at least at present it is the will of the community (as expressed in legislative enactment) to prohibit consensual sodomy, the Federal Constitution permits recourse to the sanctions of the criminal law for the achievement of that objective. The community and its members are entirely free to employ theological teaching, moral suasion, parental advise, psychological and psychiatric counseling and other noncoercive means to condemn the practice of consenual sodomy. The narrow question before us is whether the Federal Constitution permits the use of the criminal law for that purpose.

. Notable also is the fact that when the Model Penal Code was adopted by the American Law Institute a subsection which would have made consensual sodomy a misdemeanor (§ 207.5, subd [4]) was consciously omitted (ABA-ALI Model Penal Code, Proposed Official Draft, § 213.2, Status of Section, pp 145-146; Tent Draft No. 4, pp 93, 276).

. Twenty-two States have now decriminalized consensual sodomy between adults in private (Rivera, Our Straight-Laced Judges: The Legal Position of Homosexual Persons in the United States, 30 Hastings LJ 799, 950-951; NJ Stats Ann, § 2C:98-2).

. If we are correct in the view earlier expressed in this opinion that section 130.38 of the Penal Law infringes on defendants’ right of privacy which is a fundamental right, then, as observed, in Eisenstadt, the statutory classification “would have to be not merely rationally related to a valid public purpose but necessary to the achievement of a compelling state interest” (405 US, p 447, n 7). As was so in Eisenstadt, however, we do not need to measure the statute by that test inasmuch as it fails to satisfy even the more lenient rational basis standard.