Jasen, J.
(dissenting). The majority today invalidates a provision of the Penal Law[1] designed to protect persons from being harassed on the public streets by others who *939 seek only their own sexual gratification. Without addressing the arguments made by either the defendants or the People, they do so on the ground that this statute is nothing more than a companion statute to the consensual sodomy statute and since we have determined that the Legislature cannot proscribe sexual conduct between consenting adults in private, it cannot proscribe any conduct anticipatory to consensual sodomy. In my view, this court’s decision in People v Onofre (51 NY2d 476) in no way limited the Legislature’s ability to regulate public conduct, albeit anticipatory to later private conduct. As it seems to me that the statute represents a valid legislative effort to protect the public against unwarranted harassment, I am compelled to dissent.
The history of this statute does not support the majority’s contention that it “must be viewed as a companion statute to the consensual sodomy statute”. Section 240.35 of the Penal Law, denominated “Loitering” and codified with other crimes concerning public order, was derived from former sections 722 and 1148 of the Penal Law. Those proscribed loitering “about any public place soliciting men for the purpose of committing a crime against nature[2] or other lewdness” or soliciting for immoral purposes.[3] The former being more closely related to the statute now before us, it too was not codified under crimes of a sexual nature, but under that part of the Penal Law denominated “Disorderly conduct”. Thus, there is no indication that the Legislature was in any way addressing itself to private conduct; rather, every indication is that this statute was designed to regulate public conduct which would be considered offensive.
Whether or not the conduct which the loitering was in anticipation of is deemed criminal, it is clear that the State retains a very valid reason for proscribing loitering to solicit. Indeed, in recommending an almost identical statute, the drafters of the Model Penal Code recognized the continuing validity of this type of statute despite the *940 adoption of the Reporters’ recommendation to decriminalize consensual sodomy. “The rationale for retaining this offense is not the regulation of private morality but the suppression of public nuisance. Persons who publicly seek or make themselves available for deviate sexual relations openly flout community standards. Moreover, indiscriminate solicitation in public streets, parks, and transportation facilities is not only an affront to moral and aesthetic sensibilities; it is also a source of annoyance to, and harassment of, members of the public who do not wish to become involved. Section 251.3 is designed to protect the legitimate expectations of citizens in public places by proscribing this kind of annoying activity. For that reason the offense is not limited to loitering for hire, as is the case under Section 251.2 on prostitution.” (Model Penal Code, § 251.3, Comment, at p 476.)
In light of this background and its codification under “Public Order” in the Penal Law, I fail to perceive how the majority can conclude that the statute is not a harassment statute. There is no necessity that the statute require the conduct proscribed to be offensive or annoying to others. This statute embodies the Legislature’s determination that public solicitation to engage in sexual conduct is necessarily offensive to others. While some may welcome such offers, there is nothing irrational in the Legislature’s determination that the vast majority of people prefer to go about their everyday business without being stopped or solicited, especially when the solicitation involves offers to engage in the most intimate of activities.
Nor is it irrational for the Legislature to have decided that the presence of people soliciting in public to engage in sexual conduct is in and of itself annoying. In addition, such conduct can be annoying, offensive and even threatening to those who are not directly solicited but merely observe such conduct. It is not difficult to envision persons being annoyed and offended if the person they are walking with is solicited. Certainly such conduct is, at a minimum, an annoyance to those who reside in the immediate area who must witness the public solicitation of sexual partners. The Legislature’s legitimate concerns with the interests of those people who desire only to live a quiet and *941 private life mandates that it be allowed to determine when and where certain conduct is no longer protected but becomes harassment of others. Thus, I do not believe one can say, as does the majority, that “[t]he object of the loitering statute is to punish conduct anticipatory to the act of consensual sodomy.” The statute just as clearly has as an object the regulation of conduct which becomes offensive because it occurs in public.
I am further troubled by the majority’s reasoning because, although they do not state that they are invalidating the statute by application of the overbreadth doctrine, it seems to me that that rationale is implicit in their statement that (at p 938) “[i]nasmuch as the conduct ultimately contemplated by the loitering statute may not be deemed criminal, we perceive no basis upon which the State may continue to punish loitering for that purpose.” To my mind, a conclusion that the statute is unconstitutional based on this reasoning indicates that loitering in anticipation of consensual sodomy is protected just as consensual sodomy is protected. I fail to perceive what basis there is to invalidate a statute on reasoning that it reaches protected activity except on the basis that by encompassing that protected activity it is overbroad. The very concept of the overbreadth doctrine is that a statute which encompasses protected activity as part of an effort to proscribe other conduct is constitutionally flawed because of its scope — in other words, because it is overbroad. (Arnett v Kennedy 416 US 134; Tribe, American Constitutional Law, § 12-24, pp 710-724.)
The majority’s reference to People v Onofre (51 NY2d 476, supra) also leads me to conclude that the majority is depending, at least in part; on the doctrine of overbreadth. They conclude: “This statute, therefore, suffers the same deficiencies as did the consensual sodomy statute.” This court held section 130.38 of the Penal Law, which proscribed consensual sodomy to be unconstitutional “[b]e-cause [it was] broad enough to reach noncommercial, cloistered personal sexual conduct of consenting adults”. (People v Onofre, supra, at p 485.)
I cannot concur in the majority’s analysis because I do not believe that this statute is overbroad and because I do *942 not believe that the overbreadth doctrine should be applied in this case.
In deciding whether or not a statute is facially overbroad because it reaches protected as well as unprotected activity, the Supreme Court has set down certain guidelines. First, “a person to whom a statute may constitutionally be applied will not be heard to challenge that statute on the ground that it may conceivably be applied unconstitutionally to others, in other situations not before the Court.” (Broadrick v Oklahoma, 413 US 601, 610.) Thus, defendant Butler, who was flagging down cars while making loud and overt offers to sell sexual favors, cannot be heard to raise a claim that this statute is invalid because it might be used against someone else who is quietly standing on the street corner having the intent to make an indiscreet offer to a passerby.
As to defendant Uplinger, one must assume the majority accepted his argument that speech aimed at finding a sexual partner to engage in deviate sex is protected because the sexual conduct to be engaged in is no longer illegal. (People v Onofre, 51 NY2d 476, supra.) In doing so, the majority apparently applies the exception in the First Amendment area which allows a person to challenge a statute as having an overbroad and, hence, unconstitutionál scope even though his own conduct might be proscribed by a narrow interpretation of the statute. The majority apparently overlooks the Supreme Court’s admonition that the overbreadth doctrine should be “employed by the Court sparingly and only as a last resort” and should not be “invoked when a limiting construction has been or could be placed on the challenged statute.” (Broadrick v Oklahoma, 413 US 601, 613, supra.) In this case, we would comport with the Supreme Court’s mandate were we to interpret the statute as requiring a public act of solicitation to engage in deviate sex such as defendant Uplinger was arrested for. Although solicitation may be verbal in nature, it certainly involves conduct which is greater than speech alone.
Additionally, we should avoid invalidating a statute in toto on the ground that it is overbroad as applied to some conduct if it can be validated as to other conduct. As the *943 Supreme Court stated: “[O]verbreadth claims, if entertained at all [should be] curtailed when invoked against ordinary criminal laws that are sought to be applied to protected conduct.” (Broadrick v Oklahoma, supra, at p 613.) Thus, in Cantwell v Connecticut (310 US 296), a conviction under Connecticut’s breach of peace statute was set aside because the defendant’s conduct was found to be protected by the First Amendment. This, however, did not require that the statute proscribing conduct which breached the peace be invalidated in all respects.
In this case then, even if the majority concluded that defendant Uplinger’s conduct was protected by the First Amendment or that he could raise possible conflicts with the First Amendment, it would be unnecessary to invalidate the entire subdivision of section 240.35 of the Penal Law. Instead, it seems to me the proper remedy would be to apply a limited construction interpreting the statute to proscribe only acts which amount to public solicitation to engage in sexual conduct. That would be sufficient to validate the statute. Furthermore, such a construction would eliminate any fear that the broad wording of the statute would deter protected speech, particularly because such an interpretation addresses the statute to conduct as well as speech. As the Supreme Court noted in Broadrick v Oklahoma: “Although such laws, if too broadly worded, may deter protected speech to some unknown extent, there comes a point where that effect — at best a predictio'n — cannot, with confidence, justify invalidating a statute on its face and so prohibiting a State from enforcing the statute against conduct that is admittedly within its power to proscribe.” (Supra, at p 615.)
Because I do not believe that this statute when read to proscribe acts of solicitation in a public place must be invalidated under the overbreadth doctrine, it is necessary to address defendant’s further contention that the statute must fall on vagueness grounds. In my view, the statute is not vague as to the specific conduct prohibited and, thus, does not allow arbitrary or discriminatory police enforcement. For a statute to be deemed unconstitutionally vague, it must be shown that it “ ‘fails to give a person of ordinary intelligence fair notice that his contemplated conduct is *944 forbidden by the statute ’ ” (Papachristou v City of Jacksonville, 405 US 156,162 [emphasis supplied], quoting United States v Harriss, 347 US 612, 617). All that is required is that the “statute must be sufficiently definite to give a reasonable man subject to it notice of the nature of what is prohibited and what is required of him.” (People v Pagnotta, 25 NY2d 333, 337 [emphasis supplied], citing People v Byron, 17 NY2d 64, 67; Lanzetta v New Jersey, 306 US 451.)
Applying this well-established rule to the statute before us, I believe the statute sufficiently informs a person of the criminal implications of loitering in a public place for the purpose of “soliciting another person to engage, in deviate sexual intercourse or other sexual behavior of a deviate nature.” (Penal Law, § 240.35, subd 3 [emphasis supplied].) The statute does not merely proscribe loitering, but points up the prohibited conduct — “soliciting another person to engage, in deviate sexual intercourse” — in language sufficiently definite to give a person of ordinary intelligence fair notice of the conduct forbidden. Thus, only those persons who solicit others in a public place and thereby create a public nuisance would be subject to arrest and prosecution under the statute. Since it is abundantly clear from the language of the statute that the Legislature intended to proscribe public acts of solicitation to engage in deviate sexual activities, such an interpretation of the statute is reasonable and the statute should be upheld just as we have upheld other statutes where the Legislature designated the conduct proscribed. (People v Pagnotta, 25 NY2d 333, supra; People v Smith, 44 NY2d 613.)
Thus, this statute should not fail on the reasoning of Papachristou v City of Jacksonville (405 US 156, supra) or People v Berck (32 NY2d 567, cert den 414 US 1093). Those cases addressed themselves to statutes which proscribed loitering under circumstances arousing suspicion (People v Berck, supra) and statutes which essentially allowed a person to be arrested because of conceivably innocent conduct (Papachristou v City of Jacksonville, supra). The latter was offensive because it was impossible for the ordinary person to know when he had transgressed the statute and thereby avoid doing so. In turn, this meant that the police *945 had unbridled discretion as to when and against whom they would apply the statute. Similarly, in People v Berck (supra), we found a statute proscribing loitering under suspicious circumstances unconstitutional because the ordinary person could not be expected to know when the circumstances were adequately suspicious to trigger an arrest. The essential flaw in those statutes was the excessive discretion given the police due to the subjective standard the statutes incorporated. Such a standard meant that criminality turned largely on how the arresting officer viewed a person’s conduct. Such is not the case with this statute; rather, specific conduct — an act of solicitation occurring in a public place and involving an offer of sexual activity — is required before police action is warranted.
There is an additional question that must be addressed before it can properly be said that a statute is constitutional. When a statute “places some restriction upon an individual’s freedom of action in the name of the police power [that law] must bear some reasonable relation to the public good.” (People v Pagnotta, 25 NY2d 333, 337, supra, citing People v Bunis, 9 NY2d 1, 4.) For this reason, we have validated statutes which proscribe conduct in a school yard (People v Johnson, 6 NY2d 549), on the waterfront (People v Merolla, 9 NY2d 62), and in the hallways of public buildings when related to narcotics use (People v Pagnotta, 25 NY2d 333, supra) because there is a valid public interest involved in regulating conduct in those areas. So, too, is there a valid public interest in regulating conduct in public places when that conduct infringes on another person’s right to privacy and to be free from harassment. Clearly, such conduct will and is directed not only at those making themselves available for such solicitation, but it is also directed to any person who happens down the street, regardless of how innocently that person happens to be there. Furthermore, such conduct can offend not only those who are solicited, but those who must, due to the necessity of being in the area, observe and overhear such conduct. In my view, it is within the power of the Legislature to regulate such conduct by proscribing solicitation related to sexual activity, even activity protected by *946 an individual’s right to privacy, when that solicitation occurs in a public place.
Accordingly, by interpreting the statute to proscribe only the overt act of solicitation in a public place, I believe the statute passes constitutional scrutiny under either the overbreadth doctrine or the vagueness doctrine. I do not, at this time, portend, as the majority suggests, to pass on the constitutionality of all statutes directed at “conduct of this nature”, but merely speak to the statute before us. In so interpreting this statute, we fulfill our obligation to sustain the constitutionality of the statute if such construction can fairly be held to have been within the contemplation of the Legislature. Given the clear intent of the Legislature to address offensive public behavior, it cannot be said that such an interpretation would constitute judicial legislation.
Given this interpretation and perspective on the statute and its derivation, I cannot agree with the majority that it is only designed to proscribe conduct anticipatory to the act of consensual sodomy. No person should have the right to create a public nuisance or disturb others on the street so that he may later engage in private sexual conduct. The Legislature certainly is within its authority to regulate conduct in public and I believe they have done so in a constitutional manner in this case.
Chief Judge Cooke and Judges Jones, Wachtler, Fuchsberg, Meyer and Simons concur in memorandum; Judge Jasen dissents and votes to affirm in an opinion.
In each case: Order reversed, etc.

. Section 240.35 of the Penal Law provides, in pertinent part, that “[a] person is guilty of loitering when he: ** * * 3. Loiters or remains in a public place for the purpose of * * * soliciting another person to engage, in deviate sexual intercourse or other sexual behavior of a deviate nature”.

. Crimes against'nature were defined in former section 690 of the Penal Law and incorporated all acts of sodomy, consensual or otherwise.

. The later section was clearly aimed at pimping activities as it also made it a crime to live wholly or in part on the earnings of a prostitute.