OPINION OF THE COURT
John Manning Regan, J.
In this prosecution for obscenity in the third degree, a class A misdemeanor, the information alleges operative facts which have charged the defendant as a participant in an obscene performance.[1] Ms. Thousand, it is stated, danced naked inside an enclosed and soundproofed booth as a Dial-A-Doll.
The evidence at the trial described the booth and the Dial-A-Doll procedure. A patron purchased coins (probably tokens or slugs) from a cashier at the rate of six for $5. He then went to the rear of the premises where the booths were located. At that site, several women were standing about, all dressed in ballet tights, or similar type bodysuits. The patron selected one of the women to perform.
The patron then entered a small booth about six feet square and seven feet high by means of a solid door. Once inside the booth, he could see on the wall dividing his booth from the next one in line, a glass partition, with a curtain inserted between laminated glass panels. The woman he had chosen to perform the dance entered the booth on the *938 other side of the glass partition, also through an opaque and solid door. After both parties were inside their respective separate booths, the patron put the token in the slot, and the curtain between the glass panels rose for approximately three minutes. Each booth had an intercom telephone so that the occupants could talk to each other while the curtain was up, and while they were able to see each other.
The defendant advised the patron in this case (an undercover vice-squad detective) that she would respond to “tips” by dancing. He tipped her $5 through another money-collecting device, and she removed her bodysuit, and began dancing in the nude. As the patron inserted the tokens every three minutes to keep the curtain from falling, he also tipped the defendant more money to intensify the ^ provocative and sexually stimulating method of her dancing. In this case, the patron testified, defendant simulated normal sexual intercourse and anal sodomy in her dance by using plastic “dildo” devices resembling an erect phallus. As she did so, she invited the patron to join the mood of her dance by performing corresponding acts of sexual stimulation and by masturbation.
New York’s definition of obscenity, in subdivision 1 of section 235.00 of the Penal Law, follows closely the criteria set out in the opinions of the United States Supreme Court in Roth v United States (354 US 476) and Alberts v California (354 US 476). One finds in subdivision 1 of section 235.00 the familiar phrases: “contemporary community standards”, “[taken] as a whole”, and “predominant appeal is to prurient interests”. Moreover, the refinements of later obscenity cases (Manual Enterprises v Day, 370 US 478; Miller v California, 413 US 15) such as the requirements of “patent offensiveness” and “lacking in serious artistic, etc., value”, are also included. Each element of the definition is cumulative, so that an obscene publication or performance must contain all of them. Manifestly, the dance here exhibited by this defendant raises a question of fact under the statute as to whether it is obscene.[2]
Howsoever that may be, before deciding the issue of fact whether the defendant’s dance in this case is obscene (as so *939 defined in Penal Law, § 235.00, subd 1), there are several threshold questions to both ask and answer. For the more recent morality cases in our appellate courts have curtailed the very reach and application of the penal laws themselves. Regardless of whether certain acts are immoral or obscene, these cases prohibit the Legislature from governing or regulating behavior of any sort so long as that behavior meets certain specific conditions of “privileged privacy”.
Illustrative of this threshold problem is the opinion of the United States Supreme Court in Stanley v Georgia (394 US 557). In Stanley, that court reversed an obscenity conviction, notwithstanding the fact that the defendant concededly possessed obscene materials, because he possessed them in the “privileged privacy” and sanctuary of his own home — a place where the penal law had no power to go.
The Stanley (supra) majority held: “We hold that the First and Fourteenth Amendments prohibit making mere private possession of obscene material[s] a crime. Roth and the cases following that decision are not impaired by today’s holding. As we have said, the States retain broad power to regulate obscenity; that power simply does not extend to mere possession by the individual in the privacy of his own home ” (394 US, at p 568; emphasis added.)
New York Court of Appeals cases, in very recent years, have expanded this “privileged privacy” doctrine far beyond mere geographical loci, such as the privacy of one’s own home. They have extended it to acts done “between consenting adults in cloistered, noncommercial settings”. Thus, it does not matter whether such allegedly obscene acts as “deviate sexual intercourse”, or “open solicitation for engaging in deviate sexual intercourse” in fact take place, because, so long as they are done between consenting adults in private, cloistered, noncommercial settings, they constitute protected privacy, and the Legislature may not criminalize those private acts.
In People v Onofre (51 NY2d 476), the Court of Appeals held: “In sum, there has been no showing of any threat, either to participants or the public in general, in consequence of the voluntary engagement by adults in private, *940 discreet, sodomous conduct. Absent is the factor of commercialization with the attendant evils commonly attached to the retailing of sexual pleasures; absent the elements of force or of involvement of minors which might constitute compulsion of unwilling participants or of those too young to make an informed choice, and absent too intrusion on the sensibilities of members of the public, many of whom would be offended by being exposed to the intimacies of others. Personal feelings of distaste for the conduct sought to be proscribed by section 130.38 of the Penal Law and even disapproval by a majority of the populace, if that disapproval were to be assumed, may not substitute for the required demonstration of a valid basis for intrusion by the State in an area of important personal decision protected under the right of privacy drawn from the United States Constitution — areas, the number and definition of which have steadily grown but, as the Supreme Court has observed, the outer limits of which it has not yet marked.” (51 NY2d, at p 490.)
To this court, that phrase, “a valid basis for intrusion by the State in an area of important personal decision” has established a precondition which the People must prove in every sexual misbehavior case, or obscenity case, involving consenting adults who engage in such behavior, or who possess and use such obscene materials, in private and cloistered settings. For the Court of Appeals obviously has no intention of retreating from Onofre (supra), as its most recent decision in People v Uplinger (58 NY2d 936) clearly shows: “We held in People v Onofre (51 NY2d 476) that the State may not constitutionally prohibit sexual behavior conducted in private between consenting adults. The object of the loitering statute is to punish conduct anticipatory to the act of consensual sodomy. Inasmuch as the conduct ultimately contemplated by the loitering statute may not be deemed criminal, we perceive no basis upon which the State may continue to punish loitering for that purpose.” (58 NY2d, at p 938.)
These cases, Onofre (supra) and Uplinger (supra) have added an element of proof to obscenity charges that has nothing to do with the moral quality of the acts. In precluding the State from criminalizing obscene conduct between *941 consenting adults in private, cloistered settings, the Court of Appeals has now required the State to prove, in addition to obscene behavior, any one or more of the following: (1) the absence of consent (express or implied); (2) public display, or (3) commercialization. For the Court of Appeals has now held that if at least one of those factors is not present, there is no valid basis for intrusion by the State’s criminal laws.
It is, therefore, mandatory for the trial courts to insist, as a precondition to conviction under any statute establishing as criminal sexual conduct of any kind in private and between consenting adults, that the prosecution prove that the acts of obscenity form “a valid basis for intrusion by the State”, sufficient to displace the privacy rights of the cloistered consenting adults engaged in those acts.
The threshold question (under these cases) then becomes in this case: Do the alleged obscene acts, performed here, in private, and between consenting adults, constitute “a valid basis for intrusion by the State”, even assuming they are obscene as defined in subdivision 1 of section 235.00 of the Penal Law.
In this case, this defendant performed her dance in private, the only persons present were the defendant, as the dancer, and the patron. No one else saw or heard her performance. Therefore, what facts the court has found comprise only allegedly obscene sexual behavior between consenting adults in a private, cloistered setting. Thus far, the People have not proved the necessary precondition, which is, they have not shown “a valid basis for intrusion by the State”. Accordingly, it is immaterial whether her dance is obscene. These acts, under Onofre (supra), come within the doctrine of “privileged privacy”, unless the Legislature has provided that because the defendant performed her dance for money, that her commercialization of obscene performances is a crime.
It is true, of course, that the People have proved that the dance here performed was done in response to the payment of money. There is no doubt, also, that Onofre (supra) and Uplinger (supra) as well as Ginzburg v United States (383 US 463) recognize that commercial exploitation of the prurient interest in sex — particularly obscene sex — can
*942 serve as a basis for legislative intrusion, even if the acts are performed between consenting adults in private, cloistered settings. But New York’s Legislature has not made “promotional pandering” an element of its obscene performance law,[3] and commercial exploitation of obscene sexual performances, unlike commercial exploitation of obscene materials, or of sexual behavior in general (see Penal Law, art 230) is not the crime the Legislature has defined in article 235 of the Penal Law, nor is it the named criminal charge the People have brought against this defendant.
The prosecutors have not deliberately omitted this criminal charge, nor have they merely, through forgetfulness or oversight, failed to lodge it against this defendant. The Legislature simply has not made commercial exploitation of an obscene performance, such as the defendant carried out in this case, a crime.
The obscenity statutes of New York have targeted two forms of obscene activity: (1) activity in obscene materials (Penal Law, § 235.05, subd 1); and (2) activity in obscene performances (Penal Law, § 235.05, subd 2). In respect to the former, obscene materials, both “promotion” and “wholesale promotion” are forbidden, and both terms encompass commercial exploitation; and the statutory definitions of those terms make that legislative meaning very clear. (See Penal Law, § 235.00, subds 4, 5.)
However, in respect to the latter, obscene performances, the Legislature, inexplicably, has neglected to use the terms “promotion” and “wholesale promotion”, and has not forbidden commercial exploitation.
What the Legislature has forbidden in respect to obscene performances is neither “promotion” nor “wholesale promotion”, but production, presentation and/or direction.[4] Unlike the terms “promotion” and “wholesale promotion”, there are no legislative definitions in section 235.00 of the Penal Law of the terms “production”, “presentation”, or “direction”. Moreover, normal usage of those words does not necessarily imply commercial exploitation.[5] Therefore, *943 although the Legislature can no longer criminalize the defendant’s obscene performance in this case (under the decision of the Court of Appeals in People v Onofre, supra), simply on defined obscenity grounds, because it was performed in a private, cloistered setting between consenting adults, it could have, nevertheless, punished her performance if it had made commercialization of an obscene performance a crime.
“Promotion” or commercial exploitation, would also have constituted, under the Onofre decision (supra), a valid basis for intrusion by the State.
Yet, despite the fact that the Legislature reviewed the obscenity statutes in 1982, and notwithstanding that legislative opportunity occurred after the Onofre decision of 1981, no such substantive amendments were enacted.[6]
A major legislative omission, accordingly, still continues in the substantive definitions of the crime of obscenity itself. For example, in the instant case, no obscenity charges against the owner(s) of the establishment who allow Ms. Thousand to perform as a Dial-A-Doll can be founded since the owner(s) do not “produce”, “present”, or “direct” Ms. Thousand in her dance. Their only interest is commercial exploitation. Their only act is commercial exploitation, that is, “promotion” or “wholesale promotion”. Thus, they cannot be charged, for neither promotion, nor wholesale promotion of an obscene dance as a Dial-A-Doll is a criminal offense.
For the same reasons, Ms. Thousand’s own commercial exploitation of her own performance — even assuming it is obscene — cannot violate the present obscenity laws, for the simple reason that those laws have not made her commercial promotion of an obscene performance a crime. Since Onofre (supra) has excepted from its privileged-privacy protective umbrella only those immoral and obscene acts done between consenting adults in private for *944 money, and since that singular exception is not yet a crime under our obscenity laws for obscene performances, no finding of guilt on this evidence can be made.
Thus, ultimately, since the Court of Appeals will no longer constitutionally allow criminalization of obscene and immoral conduct between consenting adults in private, cloistered settings, unless commercialization is present, their decisions have compelled the conclusion that the defendant’s acts in this case are beyond the pale of the present legislative enactments, and do not constitute a crime.
On the law alone, and not the facts, the information is dismissed, and the defendant is discharged. This is a trial order of dismissal pursuant to CPL 290.10.

. This case deals only with subdivision 2 of section 235.05 of the Penal Law, and does not include any issue of promotion (as defined in § 235.00, subds 4, 5) of obscene material.

. This case was tried without a jury, and the court is functioning as finder of fact, as well as Judge of the law.

. Subdivision 1 of section 235.05 penalizes commercial exploitation of obscene material, not the commercial exploitation of obscene performances.

. See Penal Law, § 235.05, subd 2.

. Nor can they be “interpreted” to mean commercial exploitation, for the Legislature has defined promotion in that manner.

. The 1982 amendments enhanced the second conviction of the former “Obscenity 2nd Degree” to a class “E” felony, and restructured the statutes to make the former misdemeanor, obscenity, second degree, into obscenity, third degree, and the class “E” felony thus created, now has become obscenity, second degree. The bills’ objective was to increase the maximum fine on traffickers in obscene materials from $1,000 to $5,000. (Cf. Memorandum In Support of Legislation, Assembly Bill A 2476, dated June 9,1982, from Committee on Codes.)