OPINION OF THE COURT
Alois C. Mazur, J.
Shortly after announcing the decision herein the court was asked for the reasons behind its decision. Thus, this written decision resulted.
However, to avoid the possibility of undue embarrassment to the defendant and the perpetuation of her name into posterity for the subject of this decision it was decided to change the title of this criminal action as indicated. (What, after all, would be the sense of "sealing” the records of cases?)
This case involves an attempted application of Penal Law *198 § 245.00 (public lewdness). The court suspects that the dearth of reported cases interpreting, or involving this section is due to the concern inherent above and also to the fact that many cases are not tried but pleaded to a reduced charge in order to avoid the risk of a misdemeanor conviction, the embarrassment of a trial and/or consequent publicity. Thus, this not only accounts for the dearth of published opinions and trials but also for the virtually automatic pleas and the static, undeveloped nature of the law on the subject.
The facts in the instant case are substantially as follows: Two undercover police, parked in an "unmarked” police car, observed this female defendant talking to a male at a relatively busy area of the city. The police witness appeared eager —if unresponsively so — to point out that the area was noted for its "prostitution, or sexual activities”. The defendant soon entered the male’s vehicle and both departed from the scene.
The undercover police followed the vehicle some distance to an almost deserted parking lot on a college campus in the city. The car stopped but, probably due to a marked campus police car, again departed.
The car then proceeded some distance and parked at the curb of a quiet residential street in the city. The police maintained that it was parked near a street light; that some house lights nearby were lit. However, it was dark, almost 11:00 p.m., overcast and, the court found, that there was no pedestrian traffic and virtually no vehicular traffic.
The police witness testified that after passing the vehicle in the unmarked car he could see movement and upon approaching the vehicle on foot he could readily see the act of oral sodomy being performed by the defendant upon the seated male.
Before we proceed to a fuller discussion of the issues herein, the court should point out that the Buffalo police, as perhaps the police of other New York communities, have frequently applied Penal Law § 245.00 after our Court of Appeals declared that the old Penal Law § 130.38, which criminalized consensual sodomy, was unconstitutional. (See, People v Onofre, 51 NY2d 476 [Dec. 18, 1980].)
It is essentially the opinion of the court that Penal Law § 245.00 was intended to proscribe an "exhibitionist” (with all its "publicness” ramifications) type of "lewd” conduct.
Penal Law § 245.00 was hardly intended to embrace fact situations, as herein, where the parties were obviously at *199 tempting, that is, intending (and “intention” is, after all, an essential element of the offense) to be clandestine.
The application and use of Penal Law § 245.00, under the circumstances of this case, and many similar to it, is nothing more than an attempt to avoid the effects of People v Onofre (51 NY2d 476, supra) and to take advantage of the strong likelihood that arrested defendants — male or female — will, for obvious reasons, seldom go to trial, seldom test the law.
We are dealing herein specifically with Penal Law § 245.00 (a), which requires that the overt conduct be in a public place. However, the public lewdness statute, taken as a whole, proscribes overt lewd conduct whether conducted in public or on private premises. The only test appears, on first blush, to be whether or not the results of the alleged lewd conduct— whether from a public or private place, were intended to be seen or observed by the public.
Intrinsic, however, in considerations of what is a "public place” — at least in the context herein — are considerations involving “privacy” and "private place”. The considerations are at times, as here, inseparable in the opinion of the court.
In People v Onofre (51 NY2d 476, 488, supra) the court spoke of the “cloak of the right of privacy” and this court suggests that the “public place” element should, under the circumstances, be considered, or be balanced, in relation to the "right of privacy” considerations under our Constitutions. (It is believed that at least in this regard the Federal and State considerations are substantially similar.)
The two ideas — “public place” and "privacy” are in this context, interconnected, related, for the purpose of analyses.
As in the Onofre case (supra), this court has reflected upon the now commonly accepted dissenting words of Justice Brandeis in Olmstead v United States (277 US 438, 478): “The makers of our Constitution undertook to secure conditions favorable to the pursuit of happiness. They recognized the significance of man’s spiritual nature, of his feeling and of his intellect. They knew that only part of the pain, pleasure and satisfactions of life are to be found in material things. They sought to protect Americans in their beliefs, their thoughts, their emotions and their sensations. They conferred, as against the Government, the right to be let alone — the most comprehensive of rights and the right most valued by civilized men. To protect that right, every unjustifiable intrusion by the Government upon the privacy of the individual, whatever the *200 means employed, must be deemed a violation of the Fourth Amendment.”
Nor is the concept of "privacy”, "the right to be let alone” or "right to privacy” limited to or solely arising out of Fourth Amendment, or search and seizure cases. The "right to privacy” while not explicitly mentioned in our US Constitution has been deduced, especially since 1965, to exist as a result of various "penumbras” and "emanations” from several provisions of our Bill of Rights, specifically: the First, Third, Fourth, Fifth and Ninth Amendments. (See, discussion and analysis in Levy, Original Intent and The Framers’ Constitution, at 267-269, 381-382 [1988].)
Given the comprehensive, constitutional guarantees of privacy and the respect given thereto by the civilized portion of our society, the court must, at times, consider "privacy” factors in determining what is the true meaning, or possible constitutional application of a statute.
This is particularly true in the case of Penal Law § 245.00 which is peculiarly subject to misapplication and potential abuse.
Thus, because "the right to be let alone”, "the right to privacy” is so respected by civilized society, so comprehensively and constitutionally protected, Penal Law § 245.00 cannot in any way be applied or interpreted to apply to any situation where it could be said that, under all the circumstances of the case, the defendants reasonably should have expected privacy. "Whether or not the alleged lewd conduct was in a public or private place, or premises, per se, is not controlling.
Thus under this analysis a person could expect, for certain purposes, privacy in a public telephone booth under the most "public” of situations. As an example, a person making a telephone call in Times Square at high noon on a sunny day should, at least when making a call in a reasonable tone and for a short period of time, reasonably expect civilized people and the government to "back off”; to "let him alone”; not to intrude upon his "privacy”. Those who would put themselves in a position to listen, to hear — whether government agent or not — would be considered by civilized people to be "boorish” but certainly "intruders” into the "privacy” of an individual.
Even in a private automobile parked in a public place (e.g., on a residential street or a parking lot) albeit near a street lamp, one may possibly expect privacy. This is especially true *201 where, as here, the areas is a low vehicular traffic area; where pedestrian traffic is nonexistent and unexpected; when it is late evening and "overcast”.
The fact that these surveilling, undercover officers could and did apparently see what they, as experienced vice squad officers would describe as a lewd act, is in no way controlling.
Such officers are simply not in the class of people toward whom this type of conduct would be intended; they do not constitute the potential class of "unwilling” and "unsuspecting” viewers who are intended to be the target(s) of the alleged lewd conduct. (See, People v Conrad, 70 Misc 2d 408.)
The circumstances herein, taken as a whole, seem to indicate that there were no public "targets” of the alleged lewd conduct intended. As a matter of fact, it could be argued that the parties were bent upon finding a secluded environment. (They even moved away from a college campus parking lot, apparently when a marked campus police car was seen, and moved to what could be characterized as a "safer” area.)
If the unexpected passerby (pedestrian or vehicular) did appear; if, per chance, someone did happen to look out a window, such persons were obviously not intended to be the viewers of whatever, if anything, could be seen from their vantage point, at their fortuitous moment.
The court expresses no view as to any social, medical, theological, moral or psychological views on the subject of consensual sodomy, or "lewd acts” (whatever "lewd acts” may be, since the Legislature chose to leave it undefined).
It would be irrelevant for the court to express a view on these subjects. The court need only concern itself, as it has, with whether or not all the elements of the offense were established beyond a reasonable doubt and whether or not the subject statute has been misapplied by the police.
The court has determined that the People have not proven all the elements of the offense beyond a reasonable doubt.
The court also is of the opinion that under the circumstances herein, section 245.00 was misapplied by the police; that in this case and many like it, a statute designed essentially to proscribe lewd "exhibitionism”, with all its "public” ramifications — i.e., involving "lewd” acts intended to be seen by "targeted” viewers (actual or likely) was applied to essentially something intended to be nonpublic; that here and in *202 many cases like it, we have essentially an attempt to avoid the effects of People v Onofre (51 NY2d 476, supra); that "right to privacy” considerations are relevant in determining the "public place” and "publicness” nature of the requirements in the statute, and the intent of the parties arrested.